# KIRBY *v.* TALLMADGE.

## APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 96.   Argued December 5, 1895. — Decided January 6, 1896.

When one party to an action has in his exclusive possession a knowledge of facts which would tend, if disclosed, to throw light upon the transactions which form the subject of controversy, his failure to offer them in evidence may afford presumptions against him.

Where land is used for the purpose of a home, and is jointly occupied by husband and wife, neither of whom has title by record, a person proposing to purchase is bound to make some inquiry as to their title.

The possession of real estate in the District of Columbia, under apparent claim of ownership, is notice to purchasers of the interest the person in possession has in the fee, whether legal or equitable in its nature, and of all facts which the proposed purchaser might have learned by due inquiry.

This principle applies with peculiar cogency to a case like the present, where the slightest inquiry would have revealed the facts, and where the purchaser deliberately turned his back upon every source of information; and a purchase made under such circumstances does not clothe the vendee with the rights of a *bona fide* purchaser without notice.

THIS was a bill in equity filed by Maria E. Tallmadge against the appellants, to set aside and remove, as a cloud upon her title, a deed made by the appellants Richard H. Miller, Elizabeth Houchens, and Ella A. Goudy, claiming to be heirs at law of one John L. Miller, deceased, dated August 30, 1888, and purporting to convey to the appellant Kirby the property therein described. The bill further prayed for the cancellation of a trust deed executed by the appellant Kirby and his wife to the defendants Willoughby and Williamson, and for an injunction against all the defendants except Kirby, restraining them from negotiating certain notes given by Kirby for the purchase of said lots, etc.

The facts disclosed by the testimony show that, in 1882, Mrs. Tallmadge, the appellee, purchased of one Bates, for a home, lots Nos. 77 and 78, in square 239, in the city of Washington, with the improvements thereon, for the sum of ten thousand dollars, five thousand of which were paid in cash, the residue to be paid in five instalments of one thousand dollars

each. Instead of taking the title to the property in herself, she furnished the money to John L. Miller, a friend of the family, who paid the $5000 cash, with the money thus furnished, and at her request took the title in his own name, and executed notes for the deferred payments, which he secured by a deed of trust upon the property. Subsequently, and in June, 1883, Miller also purchased with the funds of Mrs. Tallmadge the adjoining lot No. 76, taking title in his own name, and executing a deed of trust for the deferred payments, amounting to $1266.

Mrs. Tallmadge took immediate possession of the premises, and had occupied them as her own from that day to the time the bill was filed, paying taxes, improvements, and interest on incumbrances, reducing the principal $2266, and holding open and notorious possession under her claim of title.

Mr. Miller, who claimed no title or right to the premises in himself, on December 27, 1883, by a deed signed by himself and wife, conveyed the legal title to Mrs. Tallmadge, but this deed, through inadvertence or otherwise, was not recorded until October 4, 1888. Mr. Miller died in February, 1888, and by his will, which was dated December 1, 1880, devised his estate to his widow.

On June 16, 1888, defendants Miller, Houchens, and Goudy, collateral heirs of John L. Miller, who had made a contract with the defendants Willoughby and Williamson to give them one quarter of whatever they could get for them out of the estate of Miller, filed a bill in the Supreme Court of the District against the widow and executor of Miller, the holders of the notes given by him, and the trustees in one of the deeds of trust, praying for a partition or sale of the property, the admeasurement of the widow's dower, and for a charge upon the personal estate of Miller for the unpaid purchase money of the property.

To this bill the widow of John L. Miller made answer that her husband never had any interest in the property in question; that the title was taken in his name for Mrs. Tallmadge; and that long before his death he had by deed duly conveyed it to her, and that neither she nor his estate had or had ever

had any interest in the property. In August, 1888, the pendency of this suit coming to the knowledge of Mrs. Tallmadge, she sent the original deed from Miller to her, then unrecorded, by Mr. Tallmadge to Willoughby and Williamson, solicitors for Miller's heirs, who examined and made minutes from it.

On August 30, 1888, Houchens, Goudy, and Miller, who had filed the bill for partition, executed a deed conveying the property to the appellant Kirby, subject to the dower rights of Mrs. Miller, for a consideration of $12,000, $3000 of which were said to have been paid in cash and $9000 by notes secured by a mortgage or trust deed upon the property, to Willoughby and Williamson as trustees. Kirby thereupon claimed the property as an innocent purchaser without notice of the prior deed. He at once gave notice to Mr. Tallmadge that he would demand rent for the property at the rate of $1000 per annum.

On receipt of this notice Mrs. Tallmadge filed this bill to cancel and set aside the deed and deed of trust. Answers were filed by the defendants and testimony taken by the plaintiff, tending to show the facts alleged in her bill. Neither of the appellants took proof, nor did they or either of them offer themselves as witnesses, but stood upon their answers.

Upon final hearing, the court below, in special term, rendered a decree in accordance with the prayer of the bill, setting aside the deed and deed of trust as fraudulent and void, from which decree defendants appealed to the General Term, which affirmed the decree of the court below, and further directed that Miller, on the demand of Kirby, return to him the $3000 which Kirby claimed to have paid, and which Miller admitted to have received.

From this decree defendants appealed to this court.

*Mr. John T. Morgan* for all the appellants.

*Mr. W. Willoughby* for himself and Elizabeth M. Houchens, appellants. *Mr. L. Cabell Williamson* was on his brief as counsel for himself, Ellen A. Goudy, and Richard H. Miller.

*Mr. John C. Fay* for appellee.

, MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The controversy in this case arises from the fact that the deed from John L. Miller to Mrs. Tallmadge, which was given December 27, 1883, was not put upon record until October 4, 1888. In the meantime, and in February, 1888, Miller, in whose name the property had been taken for the benefit of Mrs. Tallmadge, died; and on August 30, 1888, Houchens, Goudy, and Richard Henry Miller, collateral heirs of John L. Miller, executed a deed of the property, subject to the dower rights of Miller's widow, to defendant Kirby for an expressed consideration of $12,000, of which $3000 are said to have been paid down in cash, and $9000 in notes, payable to Willoughby and Williamson. Kirby now claims to be an innocent purchaser of the property, without notice of the prior deed from John L. Miller to Mrs. Tallmadge.

There are several circumstances in this case which tend to arouse a suspicion that Kirby's purchase of the property was not made in good faith. Within three months after the probate of the will of John L. Miller, his collateral heirs, Houchens, Goudy, and Richard H. Miller, who had made a contract with Willoughby and Williamson to give them one quarter of whatever they could get for them out of the estate of Miller, filed a bill for the partition of real estate, and to set off the widow's dower. His widow, Lola, answered, admitted that her husband did not purchase the lands described in the bill, and alleged that he had conveyed them away in his lifetime.

Mrs. Tallmadge, hearing of this suit, instead of appearing formally therein, submitted her deed from Miller to the solicitors for the complainants in the partition suit, who did not amend their bill or make her a party, but apparently allowed the suit to drop; inasmuch as the complainants, being heirs of John L. Miller, took only his actual interest in the land, of which, owing to his deed to Mrs. Tallmadge in his lifetime, nothing remained at his death. Shortly thereafter, the com-

plainants in that suit, who must have been well aware that they had no title to the property, executed a deed to Kirby of all their interest in the land for a consideration of $12,000, subject to the dower right of Mrs. Miller, the debts of John L. Miller, and so much of the notes of $5000 as were unpaid, after applying his personal estate. Kirby alleges in his answer that he examined the premises twice and approached the house, but never seems to have entered it, and apparently took up with the first proposition made to him to buy it, without any of the bargaining that usually precedes the consummation of a sale of property of that value. While he avers in his answer, and Miller admits, the payment of $3000 in cash, defendants introduced no testimony whatever in support of their case, but relied solely upon their answers. As they had it in their power to explain the suspicious circumstances connected with the transaction, we regard their failure to do so as a proper subject of comment. "All evidence," said Lord Mansfield in *Blatch* v. *Archer*, (Cowper, 63, 65,) "is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted." It would certainly have been much more satisfactory if the defendants, who must have been acquainted with all the facts and circumstances attending this somewhat singular transaction, had gone upon the stand and given their version of the facts. *McDonough* v. *O'Niel*, 113 Mass. 92; *Commonwealth* v. *Webster*, 5 Cush. 295, 316. It is said by Mr. Starkie, in his work on Evidence, vol. 1, p. 54: "The conduct of the party in omitting to produce that evidence in elucidation of the subject-matter in dispute, which is within his power, and which rests peculiarly within his own knowledge, frequently affords occasion for presumptions against him, since it raises strong suspicion that such evidence, if adduced, would operate to his prejudice."

But the decisive answer to the case of *bona fide* purchase made by the defendant Kirby is, that Mrs. Tallmadge had, ever since the original purchase of the land by Miller in 1882, been in the open, notorious, and continued possession of the property, occupying it as a home. The law is perfectly well

settled, both in England and in this country, except perhaps in some of the New England States, that such possession, under apparent claim of ownership, is notice to purchasers of whatever interest the person actually in possession has in the fee, whether such interest be legal or equitable in its nature, and of all facts which the proposed purchaser might have learned by due inquiry. 2 Pomeroy's Eq. Juris. § 614; Wade on Notice, § 273. The same principle was adopted by this court in *Landes* v. *Brandt*, 10 How. 348, 375, in which it was held that "open and notorious occupation and adverse holding by the first purchaser, when the second deed is taken, is in itself sufficient to warrant a jury or court in finding that the purchaser had evidence before him of a character to put him on inquiry as to what title the possession was held under; and that he, the subsequent purchaser, was bound by that title, aside from all other evidence of such possession and holding." The principle has been steadily adhered to in subsequent decisions. *Lea* v. *Polk County Copper Co.*, 21 How. 493, 498; *Hughes* v. *United States*, 4 Wall. 232, 236; *Noyes* v. *Hall*, 97 U. S. 34; *McLean* v. *Clapp*, 141 U. S. 429, 436; *Simmons Creek Coal Co.* v. *Doran*, 142 U. S. 417.

Defendants' reply to this proposition is that the occupancy in this case, being that of a husband and wife, is by law referable to the husband alone as the head of the family; that the purchaser was not bound by any notice, except such as arose from the possession of the husband, and that, as he had no title to the property, Kirby was not bound to ascertain whether other members of the family had title or not. There are undoubtedly cases holding that occupation by some other person than the one holding the unrecorded deed, is no notice of title in such third person, and that the apparent possession of premises by the head of a family is no notice of a title in a mere boarder, lodger, or subordinate member of such family, or of a secret agreement between the head of a family and another person. As was said by this court in *Townsend* v. *Little*, 109 U. S. 504, 511: "Where possession is relied upon as giving constructive notice it must be open and unambiguous, and not liable to be misunderstood or miscon-

strued. It must be sufficiently distinct and unequivocal, so as to put the purchaser on his guard." In this case one James Townsend bought and took possession of a public house in Salt Lake City, and lived in it with his lawful wife and a plural or polygamous wife, the latter, who was the appellant, taking an active part in conducting the business of the hotel. He subsequently ceased to maintain relations with the appellant as his polygamous wife, but, being desirous of having the benefit of her services, both concealed this fact. He made a secret agreement with her that if she would thus remain, she should have a half interest in the property. He afterwards acquired his legal title to the property without a disclosure of the secret agreement. His interest therein having subsequently passed into the hands of innocent third parties for value without notice of appellant's claim under the secret agreement, it was held that the joint occupation of the premises by herself and Townsend, under the circumstances, was not a constructive notice of her claim, and that she had no rights in the premises as against a *bona fide* purchaser without notice. There were evidently two substantial reasons why appellant's possession was not notice of her rights. First, James Townsend took the legal title to himself in 1873 and held it until 1878, when the purchase was made; and, second, his agreement with the appellant was not one with his lawful but his polygamous wife, and was also a secret one. The case is obviously not one of a joint occupation by a husband and his lawful wife, neither of them having any title thereto.

In the case of *Thomas* v. *Kennedy*, 24 Iowa, 397, it was held that, where real estate is ostensibly as much in the possession of the husband as the wife, there is no such actual possession by the wife as will impart notice of an equitable interest possessed by her in the land, to a purchaser at execution sale *under a judgment against her husband*, in whom the legal title apparently was at the time of the rendition of the judgment. This case is also a mere application of the rule that, if there be any title to the land in one who is in possession of it, the possession will be referred to that title, or, as

said in 2 Pomeroy's Eq. Juris. § 616 : "Where *a* title under which the occupant holds has been put on record, and his possession is consistent with what thus appears of record, it shall not be a constructive notice of any additional or different title or interest to a purchaser who has relied upon the record, but has had no actual notice beyond what is thereby disclosed." That the court did not intend to hold that a joint occupation by a husband and wife is in no case notice of more than the occupation of the husband, is evident from the subsequent case of the *Iowa Loan & Trust Co.* v. *King*, 58 Iowa, 598, in which the court said: "It cannot, we think, be doubted that possession of real property by a husband and wife together, will impart notice of the wife's equities as against all persons other than those claiming under the husband, their possession being regarded as joint by reason of the family relation." In this case the occupation was by a husband and wife, and it was held that such possession was notice of a title in the wife to a life estate in the property as against the holder of a mortgage given by a son, who was a member of the family as a boarder, lodging a part of the time in his mother's house, and a part of the time elsewhere — the legal title being in the son.

In the case of *Lindley* v. *Martindale*, 78 Iowa, 379, the title to the lands was in a son of the plaintiff, who resided on a portion of them, while plaintiff and her husband resided on another portion. The lands had for a long time been cared for either by the husband or the son, and it was held that one who, upon being told that the title was in the son, took a mortgage from him to secure a loan, which was used for the most part to pay off prior incumbrances placed on the land by the son, was not charged with the alleged equities of plaintiff by reason of her claimed possession of the land, the court holding that her possession was not such as the law requires to impart notice. The case is not entirely reconcilable with the last.

In *Harris* v. *McIntyre*, 118 Illinois, 275, a widow furnished her bachelor brother money with which to buy a farm for their joint use, the title to be taken to each in proportion to

the sums advanced by them, respectively. He, however, took a conveyance of the entire estate to himself, and they both moved upon the place, he managing the land, and she attending to the household duties. The deed was recorded, and he borrowed money, mortgaged the land to secure the loan, and appeared to the world as the owner for a period of over ten years, during which time the sister took no steps to have her equitable rights enforced or asserted. It was held that her possession, under such circumstances, was not such as would charge a subsequent purchaser from her brother with notice of her equitable rights. Here, too, the record title was strictly consistent with the possession.

In *Rankin* v. *Coar*, 46 N. J. Eq. 566, 572, a widow, who occupied part of a house in which she was entitled to dower, while her son, the sole heir at law, occupied the rest of the house, released her dower therein to her son by deed duly recorded. It was held that her continued occupation thereafter would not give notice to one who took a mortgage from the son, of a title in her to a part of the house occupied by her, acquired by an unrecorded deed to her from her son contemporaneous with her release of dower. " Possession," said the court, " to give notice or to make inquiry a duty, must be open, notorious, and unequivocal. There must be such an occupation of the premises as a man of ordinary prudence, treating for the acquisition of some interest therein, would observe, and, observing would perceive to be inconsistent with the right of him with whom he was treating, and so be led to inquiry."

So in *Atwood* v. *Bearss*, 47 Mich. 72, the title to property upon the record appeared to be in the wife. Her husband's previous occupation had been under her ownership, and in right of the marital relation, and nothing had transpired to suggest that she had made the property over to him. She had, however, given him a deed, which was not put upon record. It was held that his continuance in possession was no notice of this deed, since it was obviously consistent with the previous title in herself.

Indeed, there can be no doubt whatever of the proposition

that, where the land is occupied by two persons, as for instance, by husband and wife, and there is a recorded title in one of them, such joint occupation is not notice of an unrecorded title in the other. In such case, the purchaser finding title in one, would be thrown off his guard with respect to the title of the other. The rule is universal that if the possession be consistent with the record title, it is no notice of an unrecorded title. But, where the land is used for the purpose of a home, and is jointly occupied by husband and wife, neither of whom has title by record, we think that in view of the frequency with which homestead property is taken in the name of the wife, the proposed purchaser is bound to make some inquiry as to their title.

The case of *Phelan* v. *Brady*, 119 N. Y. 587, is an instance of this. In this case a suit was brought to foreclose a mortgage upon certain premises, given by one Murphy, who held an apparently perfect record title to the property. It appeared, however, that before the execution of the mortgage, Murphy had conveyed the premises to one Margaret Brady, who was in possession, and with her husband occupied two rooms in the building on the premises. She also kept a liquor store in a part thereof. The other rooms she leased to various tenants, claiming to be the owner and collecting the rents. Her deed was not recorded until after the giving of the mortgage. It was held that her actual possession under her deed, although unrecorded and its existence unknown to plaintiff, was sufficient notice to him of her rights to defeat any claim under the mortgage. This case goes much farther than is necessary to justify the court in holding that Mrs. Tallmadge's possession was notice in the case under consideration, as the actual occupation of the wife was only of two rooms in a tenement house containing forty-three apartments.

If there be any force at all in the general rule that the possession of another than the grantor, puts the purchaser upon inquiry as to the nature of such possession, it applies with peculiar cogency to a case like the present, where the slightest inquiry, either of the husband or wife, would have revealed the actual facts. Instead of making such inquiry, Kirby turns

his back upon every source of information, does not even enter the house, makes no examination as to whether the property was in litigation, and buys it of collateral heirs of Miller, subject to his widow's dower if he had had the title, to an unpaid mortgage, and to the chances of the property being required for the payment of Miller's debts. It is clear that a purchase made under such circumstances does not clothe the vendee with the rights of a *bona fide* purchaser without notice.

We see no reason for impeaching the original purchase of the land by Mrs. Tallmadge. Her account of the transaction is supported by the testimony of all the witnesses, as well as by the receipts and other documentary evidence. Her failure to cause the deed to be recorded is not an unusual piece of carelessness, nor is it an infrequent cause of litigation. Under the circumstances of the case, it raises no presumption of fraud. What motives she may have had for taking the title to the property in the name of Mr. Miller is entirely immaterial to the present controversy, although it appears from her testimony that she was possessed of money in her own right, and took this method of investing it.

The decree of the court below is, therefore,

*Affirmed.*