# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

## FREITAG v. FREITAG.

ALIENS; WILLS; UNDUE INFLUENCE; EVIDENCE; INSTRUCTIONS TO JURY.

1. Under the Act of Congress of March 2, 1897 (29 Stat. at L. 618, chap. 363, Comp. Stat. 1916, sec. 3490) permitting aliens to "convey" their title to land at any time before the commencement of escheat proceedings, and the Act of Congress of February 23, 1905 (33 Stat. at L. 733, chap. 733, Comp. Stat. 1916, sec. 3497), making the former act applicable to the District of Columbia, an alien has the right to devise land in the District of Columbia where no such proceedings have been instituted.

2. The trial court properly withdraws from the consideration of the jury an issue of undue influence in a contest over the validity of a will by which a son left his entire estate to his father to the exclusion of his two brothers, where the testimony of the caveators tends to show harsh conduct on the part of the father in his relations with the testator, which would naturally produce antagonism rather than submission and easy acquiescence; that the father knew nothing of the execution of the will, or ever spoke to the testator concerning it or the disposition of his property; that the father helped the testator in the acquisition of the estate and was in practical control of his son's business during the latter's lifetime; and that the testator

Vol. XLVII.—1.

some years before his death made a gift of a row of houses to his father. (Following *Stant* v. *American Secur. & T. Co.* 23 App. D. C. 25.)

3. Refusal of the trial court to instruct the jury at the request of the caveators in a will contest in which undue influence on the part of the sole beneficiary under the will and want of testamentary capacity are charged, that the failure of the beneficiary to testify must be taken as testimony against him, is not error, where the caveators have failed to offer testimony sufficient to sustain the charges made by them.

No. 3068.    Submitted October 2, 1917.    Decided November 12, 1917.

HEARING on an appeal by the caveators from an order of the Supreme Court of the District of Columbia, sitting as a probate court, admitting a will to probate after a contest over its validity.                            *Affirmed.*

The facts are stated in the opinion.

*Mr. Henry E. Davis* and *Mr. Joseph Y. Reeves* for appellants.

*Mr. C. B. Bauman* and *Mr. Chapin Brown* for appellee.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

This is an action to declare invalid what purports to be the will of Henry. C. Freitag. By the terms of the alleged will he bequeathed and devised to his father Henry Louis Freitag, all his property, both real and personal. The document is dated January 30, 1914. Henry died, and on May 4, 1915, the document was filed for probate. The brothers of the decedent, Robert and Frederick, filed their caveat against the so-called will, and thereupon issues were formed for trial by a jury. They were:

First: Was the said Henry C. Freitag at the time of his death a citizen of the United States?

Second: Were the contents of the paper purporting to be his will known to him at the time of the execution thereof?

Third: Was he of sound and disposing mind at the time of executing the purported will?

Fourth: Was the execution by him of the purported will induced or procured through undue influence practised upon him by Henry Louis Freitag and Hulda L. Saffran, or either of them, or by any other person or persons? The jury, to which the questions were submitted, returned an affirmative answer to the first three, and, by direction of the court, a negative answer to the last question. There was a judgment admitting the will to probate, and the caveatees appealed.

It is urged that there is not sufficient competent evidence to sustain the finding of the jury with respect to the first question. We do not find it necessary to decide this, because, as we view the law, it is immaterial whether the decedent was or was not a citizen. The matter, in our judgment, is ruled by statute. On March 2, 1897, an Act of Congress was approved which provided "that any alien who shall hereafter hold lands in any of the territories of the United States in contravention of the provisions of this act may nevertheless convey his title thereto at any time before the institution of escheat proceedings as hereinafter provided." (29 Stat. at L. 618, chap. 363, Comp. Stat. 1916, sec. 3493). On February 23, 1905, this statute was made applicable to the District of Columbia, by an Act of Congress, in the following words: "That the act entitled 'An Act to Better Define and Regulate the Rights of Aliens to Hold and Own Real Estate in the Territories,' approved March 2, 1897, be, and the same is hereby, amended so as to extend to aliens the same rights and privileges concerning the acquisition, holding, owning and disposition of real estate in the District of Columbia as by that act are conferred upon them in respect to real estate in the territories of the United States. * * * That all laws and parts of laws so far as they conflict with the provisions of this act are hereby repealed." (33 Stat. at L. 733, chap. 733, Comp. Stat. 1916, sec. 3497.) This statute was in force when the will was made. By it aliens were given the right to convey their title at any time before the institution of escheat proceedings. No such proceedings were commended as to this property. The word "convey" means, "to transfer the title to or of, as real estate."

(Standard Dict.; Burrell's Law Dict. 281; Bl. Com. 294.)   To devise property is to convey it.   Therefore, Henry C. Freitag, whether alien or citizen, had the power, at the time the purported will was made, to dispose of his property by will.

Appellants did not assign as error the answer of the jury to the second question.

The next question relates to the action of the court in withdrawing the issue of undue influence from the jury.   There is much testimony in the record tending to show that Henry Louis Freitag, father of the decedent, was far from being a kind parent.   At times he applied to his children foul epithets, and otherwise abused them.   When he discovered that the decedent was dead he showed no sorrow and failed to speak to his two others sons,. the caveators, when they came into the room of death. ' Conceding that this conduct was unworthy of a father, we find nothing in it tending to show undue influence practised by him upon the decedent.   On the contrary, its natural effect would be to produce antagonism, not submission and easy acquiescence.   There is no testimony in the record tending to show that the father, prior to the death of the son, knew when or where the document in question was executed; nothing to show that he ever spoke to his son about making his will, or had anybody else speak to him.   Nor does the record disclose that he discussed with Henry, the decedent, the disposition of the latter's property.   At one time, in answer to a question by Robert, the father said that Henry, the decedent, was seriously ill in a hospital, and that he already had made his will and bequeathed all his property to orphan asylums and hospitals.   This was before September, 1913, and before the will in question was executed, which was January 30, 1914.   Therefore, the will to which the father referred was not the will under consideration in this action.

Henry acquired quite a fortune.   He was saving of his money; invested some in a building association, bought real estate and built houses.   In this the father helped him.   The latter was practically in control of the business; Henry's participation being principally in paying bills.   Some seven years before his death Henry conveyed to his father, for life, a row of

houses yielding a monthly rental of $157.50, which the father has been in possession of ever since. This is in substance all the testimony upon which appellants predicate their contention that the father practised undue influence upon the son. We think it has no tendency to support their view. Appellants do not argue in this court that there was any testimony bearing upon undue influence by Hulda L. Saffran, or any other person, except the father.

The court was right in withdrawing the issue of undue influence from the jury (*Slant* v. *American Secur. & T. Co.* 23 App. D. C. 25; *Beyer* v. *LeFevre,* 186 U. S. 114, 46 L. ed. 1080, 22 Sup. Ct. Rep. 765), unless the failure of the father to become a witness should have been considered as some evidence upon that point, and to this question we now address ourselves. Appellants requested the court to charge the jury that the nonappearance of the father as a witness should be taken as testimony against him on that issue and on the issue of mental incapacity. The burden of proof of undue influence was on the caveators. They had failed to sustain this burden, as we have shown, and therefore it was not incumbent upon the caveatees to offer any evidence upon that issue. There is nothing to the contrary in any of the cases cited by the appellants. 10 R. C. L. 888, sec. 36; 16 Cyc. 1064; *Howe* v. *Howe,* 199 Mass. 598, 127 Am. St. Rep. 516, 85 N. E. 945; *Hiss* v. *Weik,* 78 Md. 452, 28 Atl. 400; *Kirby* v. *Tallmadge,* 160 U. S. 382, 40 L. ed. 465, 16 Sup. Ct. Rep. 349. The case of *Howe* v. *Howe* may be taken as a type of the others. In that case the court said: "The rule prevails in equity, as well as in law, that the omission by one party to offer evidence which may be within his reach, to control or explain evidence given by others, adversely affecting his rights or interests, is a circumstance entitled to consideration. It may be regarded as conduct in the nature of an admission." That presupposes that there was some testimony to be met. In the case at bar there was none. The law presumed that the caveatee had not used undue influence. That presumption remained with him until some testimony was offered tending to overthrow it. None was offered, and there-

fore the rule invoked by appellants has no application. The record is free from error, and the judgment of the lower court is affirmed.          *Affirmed.*

A motion for reargument was denied December 1, 1917.