## CHILLEMI v. PENNSYLVANIA RUBBER CO. et al.

Court of Appeals of District of Columbia. Submitted February 4, 1929. Decided March 5, 1929.

No. 4708.

George P. Lemm and Raymond M. Hudson, both of Washington, D. C., for appellant.

Lucas P. Loving and Lunsford L. Hamner, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District dismissing appellant's bill for the cancellation of a deed of trust, and for incidental relief.

A short time prior to 1920, appellant, Chillemi, came to this country from Italy and became a resident of the District. He was unfamiliar with the English language and, desiring to purchase a home, consulted his cousin, T. C. Restifo, who was engaged in business here. Restifo ascertained that premises 811 Michigan Avenue N. E. were for sale for $5,000; $1,000 cash payment and the balance in deferred payments. A deposit of $200 was required. Chillemi informed Restifo that he could raise but $700, and asked Restifo to loan him the balance necessary to make the initial payment. Res-

tifo agreed to make the loan, provided he could be properly secured, and suggested that he would take the deed in his own name and hold the title until Chillemi could repay him. To this Chillemi agreed, and with his personal check made the $200 cash deposit. Subsequently he made an additional deposit of $500, as appeared by the canceled check introduced in evidence. Restifo furnished the balance necessary to complete the purchase, and on June 26, 1920, a deed to Restifo was executed and duly recorded on July 1, 1920. Restifo and his wife executed and gave back to Lloyd, the grantor, a first deed of trust for $4,000 to secure the deferred purchase money.

Canceled checks evidencing repayment of money advanced by Restifo were introduced in evidence. On April 27, 1921, Restifo, having been fully repaid, and his wife executed a deed to the premises to Chillemi, but the deed was not recorded until February 8, 1922; Chillemi testifying that he did not know it was necessary to record it "until some one told him he should record his papers." Chillemi also made further payments on the deferred purchase price, and paid for all improvements subsequently made on the property.

In July of 1920, the premises were vacant, and so remained until the latter part of August of that year, when Chillemi moved in, since which time he, with his family, have continuously occupied the upper story as a home. In December of 1920, he procured a tenant for the first floor, but the lease was signed by Restifo, for the reason that the record title was in him. Chillemi received the rent. In July, 1923, Chillemi, desiring to get a building and loan association to take up the loan on the property, had the title searched, and the title company informed him that there was recorded against the property a deed of trust in favor of the appellee rubber company. Whereupon, he communicated with his attorney and with Restifo "to ascertain what it was all about." Chillemi then had repaid Restifo, and had paid off $1,000 on the Lloyd trust.

On November 1, 1920, Restifo was indebted to the rubber company on open account in the sum of $1,469.28. The indebtedness had been overdue since May, 1920. He was informed by the attorney for the rubber company "that he would have to pay the claim immediately or secure it." Restifo then was living at 1325 Quincy Street N. E., but the title to those premises was in his wife. The title to premises 820 Michigan Avenue N. E., was in his own name, as was the title

to the premises here involved, 811 Michigan Avenue N. E. Restifo testified that it was understood that the debt was to be secured by a trust on the Quincy street home, but his testimony on this point is equivocal.

The attorney for the rubber company testified that he asked Restifo what property he had, and that Restifo mentioned 1325 Quincy Street N. E., and two pieces of property on Michigan Avenue N. E.; that he (the attorney) asked him about the incumbrances on each, and made an investigation of the record, which disclosed that the Quincy street property was in the name of Mrs. Restifo; that he prepared the trust on the premises 811 Michigan Avenue N. E. It does not appear from his testimony why he selected 811 Michigan avenue instead of 820 Michigan avenue. It does appear that "he did not go out to look at the property No. 811 Michigan Avenue N. E. to see who occupied it before taking a trust thereon."

The deed of trust from Restifo to the rubber company was dated November 1, 1920, and recorded November 17, 1920. The trustees under the deed of trust advertised the property for sale on October 2, 1923; whereupon appellant filed his bill to restrain the sale and cancel the deed of trust. The court below, in disposing of the case, said: "In this case the plaintiff permitted the title to the property to which he undertakes to set up a resulting trust to be taken in the name of his relative Restifo, and Restifo for what I hold to be a valuable consideration executed a deed of trust for the benefit of the Rubber Co., and it was not until thereafter that Restifo carried out the trust by a conveyance to the plaintiff."

The evidence leaves no room for doubt of the good faith of Chillemi. His account of the transaction is consistent, and supported by canceled checks and other evidence. In the circumstances, it is not strange that the title should have been taken in the name of Restifo. Undoubtedly Chillemi had confidence in his relative, from whom he was asking a favor. Moreover, there was to be one trust on the property, and Restifo may have preferred to take the title rather than to take a second trust.

Chillemi was the equitable owner of this property. When Restifo, the trustee, undertook to convey the property to the rubber company, Chillemi was in actual, open, visible, and unequivocal possession of the property, and that possession was inconsistent with the record title. Such possession is notice to purchasers of whatever interest the person in possession has in the fee, "whether such interest be legal or equitable in its nature, and of all facts which the proposed purchaser might have learned by due inquiry." Kirby v. Tallmadge, 160 U. S. 379, 384, 16 S. Ct. 349, 351 (40 L. Ed. 463).

In that case Mrs. Tallmadge purchased for her home the property involved for the sum of $10,000, $5,000 of which was paid in cash. Instead of taking the title in her own name, she furnished the money to John L. Miller, a friend of the family, who at her request took the title in his name, executed notes for the deferred payments, secured by a deed of trust upon the property. Mrs. Tallmadge took immediate possession of the premises and continued to occupy them until the filing of her bill, paying taxes, improvements, and interest on the incumbrances. Miller claimed no title or right to the premises in himself, and on December 27, 1883, by a deed conveyed the legal title to Mrs. Tallmadge, but this deed was not recorded until October 4, 1888. Miller died in February, 1888, and in August of that year his collateral heirs executed a deed of the property to Kirby, who claimed to be an innocent purchaser of the property without notice of the prior deed from Miller to Mrs. Tallmadge.

After expressing doubt as to the good faith of Kirby, the court said: "But the decisive answer to the case of bona fide purchase made by the defendant Kirby is, that Mrs. Tallmadge had, ever since the original purchase of the land by Miller in 1882, been in the open, notorious, and continued possession of the property, occupying it as a home. The law is perfectly well settled, both in England and in this country, except perhaps in some of the New England States, that such possession, under apparent claim of ownership, is notice to purchasers of whatever interest the person actually in possession has in the fee, whether such interest be legal or equitable in its nature, and of all facts which the proposed purchaser, might have learned by due inquiry."

Evidently Mr. Tallmadge was a member of the household, for the court said: "Defendants' reply to this proposition is that the occupancy in this case, being that of a husband and wife, is by law referable to the husband alone as the head of the family; that the purchaser was not bound by any notice, except such as arose from the possession of the husband, and that, as he had no title to the property, Kirby was not bound to ascertain whether other members of the

family had title or not." After reviewing numerous authorities, the court said: "Indeed, there can be no doubt whatever of the proposition that, where the land is occupied by two persons, as for instance, by husband and wife, and there is a recorded title in one of them, such joint occupation is not notice of an unrecorded title in the other. In such case, the purchaser finding title in one, would be thrown off his guard with respect to the title of the other. The rule is universal that if the possession be consistent with the record title, it is no notice of an unrecorded title. But, where the land is used for the purpose of a home, and is jointly occupied by husband and wife, neither of whom has title by record, we think that in view of the frequency with which homestead property is taken in the name of the wife, the proposed purchaser is bound to make some inquiry as to their title." The court then said that: "The slightest inquiry, either of the husband or wife, would have revealed the actual facts. Instead of making such inquiry, Kirby turns his back upon every source of information, does not even enter the house, makes no examination as to whether the property was in litigation, and buys it of collateral heirs of Miller. * * * It is clear that a purchase made under such circumstances does not clothe the vendee with the rights of a bona fide purchaser without notice."

In the present case, Chillemi's occupation of the premises as a home was inconsistent with the record title. According to the attorney for the rubber company, Restifo had misinformed him as to the ownership of the Quincy street property, and yet the attorney did not even inspect the property upon which a trust was to be placed. Had he done so and made any inquiry whatever of Chillemi, or even of members of his family, the actual facts would have been disclosed. Failing to avail himself of the means of knowledge, he is presumed to have had the knowledge, and cannot be clothed with the rights of a bona fide purchaser without notice.

The decree is reversed, with costs, and the cause remanded, with directions to grant the relief prayed.

Reversed.