## UNITED STATES v. FIFTY–TWO CASES, MORE OR LESS, OF DISTILLED SPIRITS et al.

### No. 388 Miscellaneous.

District Court, E. D. Louisiana.

Oct. 17, 1945.

Herbert W. Christenberry, U. S. Atty., and N. E. Simoneaux, Asst. U. S. Atty., both of New Orleans, La., for libelant.

John D., M. A. & Edwin H. Grace, of New Orleans, La., for claimant and respondent.

BORAH, District Judge.

On June 2, 1944, J. P. Carter, G. W. Curtis, and Eric H. Kitchens, officers of the Alcohol Tax Unit, Internal Revenue Service, visited a farm owned by the father of R. A. Kent, the claimant herein, near Tangipahoa, Louisiana, for the purpose of questioning the claimant regarding sales of liquor in wholesale quantities believed to have been made by him without the payment of a tax. While at the farm, the officers noticed a truck containing bottles of liquor. They seized the truck with its contents, arrested Kent, and took him to Jackson, Mississippi. The instant libel for the condemnation and forfeitures of the spirits and the truck was filed in this Court on August 24, 1944.

When first questioned Kent denied that the truck and the liquor belonged to him, but later admitted ownership. He said that he already would have been in Jackson and would have "sold the stuff" if he had not stopped at his father's home overnight. During his conversation with the officers at the farm, Kent stated that he intended to sell the liquor to anyone in Jackson "wholesale or retail, whichever way he could get the most money for it." Later, however, while he was being taken to Jackson, he told the three officers that he had intended to take the liquor to the Spot Cafe, in East Jackson, Rankin County, Mississippi.

Whether or not Kent intended to sell the liquor at the Spot is important in this case, since the Spot was the only place in Mississippi where he was legally entitled to engage in business as a retail liquor dealer. His permit to engage in such business there expired on June 30, 1944, or exact-

ly four weeks after the seizure. He held no retail license for any place in Louisiana and no wholesale liquor dealer's license either for Mississippi or Louisiana during the year 1944. In other words, if Kent was transporting the liquor in question to the Spot for retail purposes, he was not violating the law. If however he intended to sell the liquor anywhere else in Mississippi or anywhere at all in Louisiana, either wholesale or retail, he was disregarding the provisions of 26 U.S.C.A.Int. Rev.Code, § 3116, which reads in part as follows:

"It shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this part (relating to industrial alcohol), or the internal-revenue laws, or regulations prescribed under such part or laws, or which has been so used, and no property rights shall exist in any such liquor or property. * * * "

The question of Kent's intent, therefore, is crucial in the instant case.

■ It is clear that Kent did not retail liquor at the Spot from June 3, 1944—the day after the seizure—until March, 1945, for during that period the Spot bar room was operated by L. N. Lackey and Ben Peirce.

Yet there is documentary evidence that on June 22, 26 and 27, in 1944, the Manhattan Distributing Company of New Orleans invoiced to Kent at his Jackson address 50, 45 and 48 cases of whiskey, respectively. The inference is inescapable that Kent disposed of these liquors at retail in some place in Mississippi other than at the Spot which was the only establishment at which he was legally entitled to retail liquor during the month of June, 1944. After June 30, Kent had no permit to retail or wholesale liquor anywhere in Mississippi.

Then there is the testimony of A. L. Clark, a retail liquor dealer of Jackson, who stated that in April, 1944, Kent delivered twenty cases of whiskey to him at Clark's place north of the city. In a deposition, Clark had said that he did not purchase the liquor from Kent, but that he gave Kent the money in advance and the latter purchased it for him in Louisiana and charged him for delivery, "at so much per case." In his subsequent testimony in open court, however, Clark said that he purchased the liquor from Kent and he

was sure that he did not pay Kent any money in advance.

There is evidence of other illegal wholesale liquor transactions by Kent. On May 26, 1943, he signed an affidavit jointly with Eugene Seaney, owner of the Spot building in Jackson, to the effect that he and Seaney had formed a partnership on January 1, 1943, for the purpose of transporting distilled spirits and wines from various wholesale liquor dealers to various retail liquor dealers. According to the affidavit they received actual and constructive title to the liquors when they were paid for and in case of a wreck, destruction or loss of the liquors it would have been their loss, since it was their money invested and they were to receive no money unless the liquors were delivered.

The testimony of Eugene Fly, Collector of Internal Revenue for the District of Mississippi, shows that wholesale and retail liquor dealer's stamps were issued to Kent and Seaney in June, 1943. There is no record of any stamps being issued to that partnership prior thereto, yet their affidavit sets forth many purchases and transportations of liquors to Jackson and East Jackson retail dealers during January and February of 1943.

■ That Kent and Seaney realized that their activities early in 1943 were illegal is indicated by the following paragraph of their affidavit:

"We were operating this business, Dick Kent and myself, thinking that the requirements of the laws and regulations were being complied with in every respect, and there was no intention to incur liability as wholesale and retail liquor dealers. The fact that such liability *has been incurred* is due to ignorance." (Emphasis supplied)

Ignorance of the law excuses no one particularly in a civil proceeding in rem.

■ It is a principle well recognized in law that similar acts may be shown to ascertain the intent with which the act in question was committed. It is likewise well settled that the similar acts may have been performed subsequently as well as prior to the act that forms the subject-matter of the litigation. This latter principle has been recognized in seizure proceedings.

In Wood v. United States, 16 Pet. 342, 41 U.S. 342, 361, 362, 10 L.Ed. 987, the United States filed an information of for-

feiture alleging that twenty-two pieces of cloth were not invoiced according to their actual cost at the port of exportation, with design to evade the duties thereon. One of the questions before the Supreme Court was whether there was error in the admission of the evidence of fraud deducible from the other invoices offered in the case. On this point, Mr. Justice Story said:

"Indeed, it is admitted by the counsel for the plaintiff in error, in the case before us, that it is a general principle of law, that whenever a fraudulent intention is to be established, collateral facts tending to show such intention are admissible proof. But the objections taken are, * * * secondly, that the proof related to importations *after*, as well as *before*, the particular importation in question. We do not think either of these objections maintainable. * * * The other objection has as little foundation; *for fraud in the first importation may be as fairly deducible from other subsequent fraudulent importations by the same party, as fraud would be, in the last importation, from prior fraudulent importations. In each case, the* quo animo *is in question, and the presumption of fraudulent intention may equally arise and equally prevail.*" (Emplasis supplied.)

See also State v. Simons, N.C., 100 S.E. 239, 240; and Smith v. State, Ala., 7 So. 52, 53.

Finally, it will be remembered that the seizing officers testified that Kent told them he intended to sell the liquor to anyone in Jackson, wholesale or retail, whichever way he could get the most money for it.

■ But were the statements attributed to Kent by the three officers untrue, or were the inferences drawn from his previous illegal sales unwarranted, one man and one man alone is in the best position to make the necessary denials. That man is Kent himself. He best of all knows what he told the officers. He more than any other human being in the world knows

what plans for the disposition of the liquor he was harboring on June 2, 1944, when the liquor was seized. Yet Kent has seen fit to remain silent throughout these proceedings, although he has intimate knowledge regarding the controverted issue of *intent*. The Court is not willing to ignore this significant silence.

In One 1941 Ford ½ Ton Pickup A. Truck, etc., v. United States, 6 Cir., 140 F.2d 255, 257, the Court said:

"But claimant's difficulty is that he wholly failed to prove the second requirement, to wit, that he had no knowledge or reason to believe that the truck was being used in violation of the laws of the United States. This pertinent and controlling evidence was within the knowledge of the claimant and he declined to testify. In Kirby v. Tallmadge, 160 U.S. 379, 16 S.Ct. 349, 351, 40 L.Ed. 463, the court approved the following quotation from Starkie on Evidence, Vol. I, page 54, to wit: 'The conduct of the party in omitting to produce that evidence in elucidation of the subject-matter in dispute, which is within his power, and which rests peculiarly within his own knowledge, frequently affords occasion for presumptions against him, since it raises strong suspicion that such evidence, if adduced, would operate to his prejudice'."

See also One Buick Automobile v. United States, 8 Cir., 275 F. 809, 810, 811.

After a careful consideration of the evidence this Court is convinced that Kent was ready to sell the liquor to the highest bidder, and was not concerned with the niceties in distinction between a wholesaler and a retailer, or between a seller and a transporter. Neither did he seem much concerned with the Federal requirement that retail and wholesale liquor dealers should possess permits and special tax stamps in order to ply their trade.

A decree may accordingly be entered condemning the distilled spirits and the Ford truck as forfeited to the United States.