Elizabeth **DE GASTER** et al., Plaintiffs,

v.

**Douglas DILLON, Defendant.**

Civ. A. No. 3748–60.

United States District Court
District of Columbia.

July 2, 1963.

William H. Collins, Samuel Herman, Washington, D. C., for plaintiffs.

David C. Acheson, U. S. Atty., Joseph M. Hannon, Asst. U. S. Atty., William P. Arnold, Dept. of Justice, Washington, D. C., for defendant.

WILLIAM B. JONES, District Judge.

## MEMORANDUM

In this action plaintiffs seek through a mandatory injunction to require the defendant Secretary of the Treasury to pay awards made to their predecessors in interest under Section 4 of the International Claims Settlement Act of 1949, 64 Stat. 13, 22 U.S.C. § 1623. The Court, following the trial of the action, has ascertained the following to be the facts and has concluded as indicated hereinafter:

Plaintiffs are the children of the deceased Adolph Philips and the niece and nephews of the deceased Philip Philips.[1] As such children and niece and nephews, they have succeeded to and are the assignees of the claims asserted by Philip Philips and Adolph Philips which are in issue here.

At the time of World War II Philip Philips and Adolph Philips owned substantial property in Yugoslavia. Following the enactment of the International Claims Settlement Act of 1949, 22 U.S.C. § 1621 et seq., they asserted claims arising out of the taking of their Yugoslav properties by the Yugoslav Government following World War II. Awards were made on those claims on December 30, 1954. The claims were docketed before the Foreign Claims Settlement Commission of the United States (originally known as the International Claims Commission of the United States) as Docket Y-1459 and Y-1460. In Docket Y-1459, the December 30, 1954 decision awarded $260,394.59 and an additional amount in the sum of $4,922.50 as interest, and in

---

1. Prior to and perhaps during a part of World War II, Philip Philips and Adolph Philips lived in Yugoslavia, of which country they were nationals until 1948. There they were known as Philip Schlesinger and Adolph Schlesinger. They migrated to the United States where they took the surname of Philips. In this memorandum they shall be referred to by the name of Philips.

Docket Y-1460, the December 30, 1954 decision awarded $140,397.40 and an additional amount in the sum of $2,596.36 as interest. Pursuant to Section 8(c) of the International Claims Settlement Act of 1949 (22 U.S.C. § 1627(c)), the awards were to be paid by the Secretary of the Treasury, the same having been certified to the United States Treasury under date of December 30, 1954 by the Foreign Claims Settlement Commission. The Secretary of the Treasury has refused to pay the amounts awarded and the reason given for refusing to do so was that the awards were obtained through the use of a false, fictitious or fraudulent document, namely, a purported decision of the Supreme Court of the People's Republic of Croatia, dated December 8, 1954.

Appearing at the trial was Joseph Brncic, President, or sometimes known as Chief Justice, of the Supreme Court of the People's Republic of Croatia.[2] The witness testified that in the middle of December, 1954, plaintiff George Philips came to the Zagreb office of the witness together with a Yugoslav by the name of Ivekovic. Also present was another judge of the Supreme Court of Croatia. Philips and Ivekovic discussed with the witness and the other judge the question of whether the Supreme Court of Croatia would issue a decision concerning the Philips' Croatian property. Philips and Ivekovic showed the judges documents evidencing action by a district commission which took the plaintiffs' land under the Agrarian Reform Act of Yugoslavia. Philips and Ivekovic desired to have the district commission's decision annulled and a decision entered by the Supreme Court of Croatia that the land had been taken under a later law. Witness Brncic testified that he advised George Philips that it was not possible to annul the Agrarian Reform Law action and issue a Supreme Court decision. The conversation was carried on in both the Croatian and English language and, according to the witness, George Philips understood the witness. Philips and Ivekovic were with the two judges of the Supreme Court of Croatia for a period of not more than 10 to 20 minutes and it might even have been a lesser time. The witness testified that the other judge present did not tell George Philips that the latter would have to go to a lower court in Croatia in order to obtain an order and that, depending upon the nature of that decision, it might come to the Supreme Court of Croatia for final decision. Following George Philips' departure from witness Brncic's offices in 1954, the witness never again saw George Philips until the occasion of this trial when he identified him in the courtroom.

In the spring of 1955, the witness for the first time saw the purported December 8, 1954 decision of the Supreme Court of Croatia. This document was sent to Yugoslavia by the Government of the United States. The document, according to the witness Brncic was not a decision of the Supreme Court of Croatia. He testified as to how it did not conform in several respects to a decision of that Court. Among other things, it stated that it had been signed by an official known as a Recorder and named Peter Illic, when, according to the witness, there was no such person serving in that capacity. Moreover, the document had impressed upon it the seal of the President

2. Joseph Brncic was the only witness produced at trial. The plaintiff's case consisted of the introduction of the above-referred to awards and the stipulation that the plaintiffs here are the proper parties, having succeeded to the claims of Philip Philips and Adolph Philips. The defendant's evidence, in addition to the testimony of witness Brncic, consisted of the above-mentioned Croatian Supreme Court decision, the English translation thereof, a letter from the State Department stating that Brncic did not have diplomatic status or immunity when he appeared as a witness in this case, and stipulations that George Philips brought the purported Supreme Court of Croatia decision from Yugoslavia to the United States and that it, together with an English translation, was presented to the Foreign Claims Settlement Commission on behalf of plaintiffs but not by any one of them.

of the Court, and a decision of the Supreme Court of Croatia would not bear the President's seal. Again, the style of the decision did not conform to decisions of the Supreme Court of Croatia and the document was written in the Serbian language when in fact all decrees issued by the Supreme Court of Croatia are in the Croatian language. Furthermore, the witness testified that the Supreme Court of Croatia had no jurisdiction to issue such a decree. A personal investigation by witness Brncic of the records of the Croatian Supreme Court showed that there was and had been no case involving the taking of the Philips' property.

Witness Brncic also testified that, as a result of the receipt from the United States Government of the purported decision of the Supreme Court of Croatia, an investigation was undertaken in Yugoslavia. The Prosecutor General of Yugoslavia authorized the investigation which was conducted by a judge of a district court in Zagreb; the Supreme Court having no authority to investigate since a purported decision of that Court was involved. No final determination of this investigation has resulted, although it has been underway since 1955. Witness Brncic testified that the investigation has been suspended or continued until such a time as George Philips returns to Yugoslavia and testifies with respect to the purported Supreme Court decision. The investigation was for the purpose of determining whether the document was authentic and, if it were not, who it was that forged it, stole the paper on which it was written and obtained and used the seal of the President of the Court.

No criminal action has ever been instituted in a court of the United States against George Philips with respect to the questioned document, although the authenticity of the document has been questioned by the United States authorities since December of 1954 or early 1955.

It was stipulated that the purported decision of the Supreme Court of Croatia was brought back from Yugoslavia by George Philips in December of 1954, and that it was presented to the Foreign Claims Settlement Commission on behalf of the plaintiffs but not by any one of them.

It was following the receipt of the purported decision of the Supreme Court of Croatia that the Foreign Claims Settlement Commission issued its final decision No. 1497 (Docket No. Y-1459) and final decision No. 1504 (Docket No. Y-1460). In each of those decisions, the Commission stated that it had issued a proposed decision in November, 1954, denying compensation for the taking of the real property located in Yugoslavia which had been owned by Philips. In each instance the Commission stated that when it issued its proposed decision it did so on the ground that the property was taken by the Government of Yugoslavia prior to the dates that the original claimants (Philip Philips in one case, and Philip Philips and Adolph Philips in the other) became nationals of the United States.

According to the final decision in each case, findings of the proposed decision resulted from a January 6, 1953 report to the Commission by the Government of Yugoslavia in which it was asserted that the property had been taken on the basis of a decision of the District Commission for Agrarian Reform and Colonization, pursuant to the Law for Carrying out Agrarian Reform and Colonization of November 24, 1945. The final decision further stated that the Yugoslav Government had submitted certified copies of the decision of the District Commission.

Furthermore, in each case the final decision of the Foreign Claims Settlement Commission stated that the claimants (being the successors of the then deceased Philip Philips and Adolph Philips) had filed objections to the proposed decision contending that the interest of the original claimants in the properties was nationalized or otherwise taken by the Yugoslav Government by operation of the Second Nationalization Act of April 28, 1948 and that the taking was effectuated after Philip Philips and Adolph Philips had become citizens of the United States. In each instance, upon the claim-

ants' request, a hearing was held on December 16, 1954, at which time counsel for the claimants presented oral argument, submitted additional evidence, and was granted leave to file a brief and submit further documentary proof. Claimants' counsel stated that the further documented proof was then in the process of being obtained by George Philips (a plaintiff here), who at the time was in Yugoslavia. The final decision in each instance stated that on December 27, 1954 the claimants filed with the Foreign Claims Settlement Commission a certified copy of the decision of the Croatian Supreme Court, dated December 8, 1954; a decision of the County People's Committee; an official certification by the Local People's Committee; a certified extract from the Land Register of the County Court; and an affidavit by George Philips setting forth the steps taken and procedure followed by him in securing such documentary proof.[3]

The Foreign Claims Settlement Commission in each final decision treated in detail with the Croatian Supreme Court decision which, among other things, provided that the earlier decision of the District Commission for Agrarian Reform and Colonization was vacated; that the real property mentioned in the decision of the District Commission was nationalized under the Law of Nationalization of April 28, 1948; and that the County Court as a land recording court was directed to make the required entries in the land records. Final decision No. 1504 then stated: "[O]n the basis of all the evidence and data now [December 30, 1954] of record, the Commission finds that the [Philips] property * * * was not taken by the Government of Yugoslavia on July 23, 1946 * * * but was in fact taken by the Government of Yugoslavia on April 28, 1948 as to Philip Philips' interest in the property and on May 3, 1948 as to Adolph Philips' interest in the

property, pursuant to the Second Nationalization Act of April 28, 1948." [4]

Having reached that conclusion, the Foreign Claims Settlement Commission made an award in each final decision and certified it to the United States Treasury on December 30, 1954, "for payment of the award in accordance with the provisions of Section 8(c) of the International Claims Settlement Act of 1949."

The Secretary of the Treasury having failed to pay the awards, this action was instituted by plaintiffs seeking relief in the form of a mandatory injunction to require the defendant Secretary of the Treasury to pay to the plaintiffs the awards certified. Plaintiffs contend that the payment of the awards by the defendant Secretary of the Treasury would be only a ministerial act and that, therefore, it should be compelled by this Court through the exercise of its equity powers.

Defendant asserts that the Croatian Supreme Court decision is false, fictitious or fraudulent and the filing of that document worked a fraud on the Foreign Claims Settlement Commission. The awards, according to the defendant, were vitiated by the fraud and the plaintiffs are without clean hands and that they are therefore estopped from obtaining the equitable relief they seek here.

I find the purported Croatian Supreme Court decision to be a false document and that the presentation to the Foreign Claims Settlement Commission of what was represented to be a certified copy of an authentic decision of the Croatian Supreme Court worked a fraud on the Commission. I make this false document finding on the testimony of the witness Brncic, the Chief Justice (or President) of the Supreme Court. Although the plaintiffs argue, in their Post-Trial Brief, that Brncic was evasive and contradictory in his testimony, I did not find him to be so. I found him to be a credible witness.

---

3. Of the documents mentioned in the final decisions, only the certified copy of the Croatian Supreme Court decision and an English translation were received in evidence. See f.n. 2.

4. Final decision No. 1497 dealt only with property owned by Philip Philips. It was otherwise in all respects the same as final decision No. 1504.

■■ On the other hand, I noted that present at the trial was George Philips, one of the plaintiffs. It was George Philips who, according to Brncic, met with the latter and another judge of the Croatian Court in Zagreb, Yugoslavia, in December, 1954, and who was told that he could not obtain a decision from the Supreme Court of Croatia which would accomplish what the document I find to be false purports to accomplish. And it was George Philips who, according to the stipulation of the parties, brought the false document back from Yugoslavia in December, 1954. Moreover, it was George Philips who certified that the translation of the purported Croatian Supreme Court decision was "a true and accurate translation from the Serbo-Croatian original" [5], while the witness Brncic testified at the trial that there was no original. If the witness Brncic testified falsely or even evasively in this case, the testimony of George Philips would have made that known in at least some critical areas, as for example that there was an original decision. But George Philips, although, as noted, present at the trial, did not testify. Therefore, as I may, I infer that if he had testified his testimony would have been unfavorable to the plaintiffs. Mammoth Oil Co. v. United States, 275 U. S. 13, 52–53, 48 S.Ct. 1, 72 L.Ed. 137 (1927); Kirby v. Tallmadge, 160 U.S. 379, 383, 16 S.Ct. 349, 40 L.Ed. 463 (1896).

■■ Having found that a fraud was worked upon the Foreign Claims Settlement Commission by filing with it a false document, I conclude the relief sought here must be denied the plaintiffs. Applicable here is the equity maxim: "he who comes into equity must come with clean hands." And that is so whether this action be considered as a suit in equity for a mandatory injunction or an action seeking the legal remedy of mandamus. In either instance equitable principles control the issuance of the writ or order. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933); Duncan Townsite Co. v. Lane, 245 U.S. 308, 311–312, 38 S.Ct. 99, 62 L.Ed. 309 (1917).

That the wrongful conduct of representing to the Foreign Claims Settlement Commission that a decision favorable to plaintiffs' claim has been made by the Supreme Court of Croatia worked a fraud on that agency is obvious from reading the final decisions of the Commission. Critical to the claims of plaintiffs was the nationality status of Philip Philips and Adolph Philips on the dates that their respective interests in the property in Yugoslavia was taken by the Yugoslav Government. The executive agreement [6] between that Government and the United States provided that claims were to be paid out of the moneys transferred to the United States by Yugoslavia (the Yugoslav Claims Fund) to nationals of the United States "at the time of nationalization or other taking" of their property by Yugoslavia. The Foreign Claims Settlement Commission's proposed decisions found that Philip Philips and Adolph Philips were nationals of Yugoslavia when their properties were taken pursuant to the Law on Agrarian Reform and

5. Both the purported certified copy of the Croatian Supreme Court decision and the translation certified to by George Philips were received in evidence pursuant to stipulation of the parties. Both plaintiffs and defendant interrogated the witness Brncic concerning the purported decision. Counsel for the plaintiffs and counsel for defendant have briefed the Court with respect to their views concerning the significance or lack of significance of the document and the testimony concerning it. Thus, it would seem that while both sides recognize that the Foreign Claims Settlement Commission's action is final and conclusive on all questions of law and fact and not subject to review (22 U.S.C. § 1623(h)), this Court, in determining whether to grant the equitable relief requested, may consider the purported Croatian Supreme Court decision and its effect on the Foreign Claims Settlement Commission.

6. The Yugoslav Claims Agreement of 1948, 62 Stat. 2658, T.I.A.S. No. 1803. See also, De Vegar v. Gillilland, 97 U.S.App. D.C. 126, 228 F.2d 640 (1955) cert. den. 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859.

Colonization in 1946 prior to the dates that Philip Philips and Adolph Philips became citizens of the United States. Thus, if the proposed decisions had become final, the Philips brothers would have been entitled to no award.[7] But the final decisions did make awards to the successors of Philip Philips and Adolph Philips because the false document purporting to be a decision of the Supreme Court of Croatia held that, by the operation of a later Yugoslav law, the Philips properties were taken on dates that Philip Philips and Adolph Philips were United States citizens.

■ The fact that in December, 1954, documents in addition to the fraudulent Croatian Court decision were presented to the Commission on behalf of plaintiffs does not alter my conclusion. As in Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 246–247, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), whether or not the false document was the primary basis for the Commission's final decisions, it did impress the Commission as is evident from those decisions. Plaintiffs thought the false document material or it would not have been presented to the Commission. "They are now in no position to dispute its effectiveness." Id. at 247, 64 S.Ct. at 1002. The false Croatian Supreme Court decision was used here for the same fraudulent purpose as the spurious publication in Hazel-Atlas. But as said in the latter case: "The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." Id. at 246, 64 S.Ct. at 1001.

■ While there is no evidence that plaintiffs Elizabeth De Gaster and Joseph Philips participated in or were informed of or otherwise knew of the fraud worked upon the Commission by their co-plaintiff and brother, George Philips, they, nevertheless, may not benefit from such fraud. At the time the

December 30, 1954 final decisions were made by the Foreign Claims Settlement Commission, Barbara Philips was the executrix of the estates of Philip Philips and Adolph Philips. It was while Barbara Philips as executrix was asserting the claims of the estates of Philip Philips and Adolph Philips that George Philips, acting for the estates, perpetrated the fraud on the Commission. After the final decisions were made by the Commission, the executrix of the estate died and the plaintiffs here, as successors in interest, stand in the same relationship as the executrix to the claims and the equities with respect to them. Lamb v. Cramer, 285 U.S. 217, 219, 52 S.Ct. 315, 76 L.Ed. 715 (1932). Thus the fraud that induced the final decision continues to taint the awards. Apposite here is the statement of the Court in Ford v. Buffalo Eagle Colliery Co., 122 F.2d 555, 563 (C.A. 4, 1941):

> True it is that all the appellants have not been found guilty of fraud in the sale of their stock to the Colliery Company. But the bar of the clean-hands maxim is not employed for the punishment of wrongdoers; rather, it is introduced to protect the court of equity and the party defendant from having the powers of the court used in bringing about an inequitable result in the particular litigation before it. * * * Thus, the appellants, though all are not guilty of unconscionable conduct, cannot here claim the benefit of a fraud perpetrated by one or two of their number. * * *

See also Kitchen v. Rayburn, 86 U.S. 254, 263, 19 Wall. 254, 22 L.Ed. 64 (1873).

The plaintiffs assert that this Court must disregard the "clean hands" equitable principle because they have not been indicted and convicted under 18 U.S.C. § 1001. They seek support for this position in section 4(e) of the International Claims Settlement Act of 1949, as

---

7. Hass v. Humphrey, 100 U.S.App.D.C. 401, 402, 246 F.2d 682, 683 (1957), cert. den. sub nom. Hass v. Anderson, 355 U.S. 854, 78 S.Ct. 83, 2 L.Ed.2d 63.

amended (22 U.S.C. § 1623(e) ). There it is stated:

> In addition to the penalties provided in section 1001 of Title 18, any person guilty of any act, as provided therein, with respect to any matter under this subchapter, shall forfeit all rights under this subchapter, and, if payment shall have been made or granted, the Commission shall take such action as may be necessary to recover the same.

 The plaintiffs read that section as providing that they cannot be deprived of the payment of the awards made in the final decisions by the Foreign Claims Settlement Commission until they are first found guilty of committing the crimes defined in 18 U.S.C. § 1001 and thereafter have their rights to the awards forfeited. I do not so construe the statute. I understand the quoted section to mean that parties guilty of using false documents may have the fruits of their fraud declared forfeited as well as be criminally punished. I do not read the statute as declaring that a judgment of criminal guilt is a prerequisite to a forfeiture. To me the statute would have to be more explicit to make it, as the plaintiffs contend, the exclusive remedy for a forfeiture and thus abrogate "the right which the sovereign otherwise has to pursue common law remedies against tort-feasors in its own courts." United States v. Borin, 209 F.2d 145, 148 (C.A. 5, 1954).[8]

 Moreover, by applying the equitable "clean hands" maxim here and thus denying the plaintiffs the equitable relief they seek, this Court does not declare forfeited the awards made by the Foreign Claims Settlement Commission in its December 30, 1954 final decision. This Court simply shuts its doors to the plaintiffs by refusing to interfere on behalf of them, to acknowledge their rights, if any, and to award them any remedy. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933).[9]

An order will be entered dismissing plaintiff's complaint.

---

8. Hines v. U. S. ex rel. Marsh, 70 App.D.C. 206, 105 F.2d 85 (1939) and National Bulk Carriers, Inc., v. Warren, 82 F. Supp. 511 (D.C.1949) are cited by plaintiffs. The statute, applied in both cases, expressly provided that the Comptroller General should institute actions to collect debts owing to the United States. The Secretary of the Treasury is not so directed by the International Claims Settlement Act of 1949, as amended.

9. It is to be noted that as recently as March 9, 1961, the defendant in his answer filed herein averred that there has been reserved on the books of the United States Treasury a sum sufficient to make a pro rata distribution on the awards to the estates of Philip Philips and Adolph Philips (p. 2, defendant's answer).