ROBERTSON, Justice:
The defendant, Gerald Henry Irving, has appealed to this Court from the judgment of the Circuit Court of Harrison County, sentencing him to death for the murder of Hazel K. Nixon (Mrs. Walter Nixon, Sr.).
In the early morning hours of Friday, November 19, 1965, Mrs. Hazel K. Nixon was stabbed to death in her home at 316 Bass Street, Biloxi, Mississippi. She was stabbed 6 times: 5 times in the front and principally in her chest and 1 time in the back, just under the right shoulder blade. This was the fatal blow and entered the right chest cavity, penetrated the right lower lung and entered the right back of the heart.
When her body was discovered Friday morning, lying in the hallway between the dining room and bedroom, she had been raped. A purse containing about $15.00 was missing.
After the left shoe of the defendant had been recovered from a shoe shop where it had been left for half-soling, which shoe *687 fitted a plaster of paris cast of a footprint in a flower bed underneath the victim’s bedroom window, the defendant was picked up for questioning in connection with the burglary of the Nixon home. This was on Saturday morning, November 20, 1965, shortly before noon. The following Monday, November 22, 1965, Defendant Irving was brought to the Mississippi State Highway Patrol Headquarters in Jackson, Mississippi, for a lie detector test which he had volunteered to take. About 2:00 P.M. that afternoon, Mr. Sam Ivey of the Highway Patrol told Assistant Chief of Detectives, Deslie Montgomery, of the Biloxi Police Department, that the defendant wanted to talk to him. Detective Montgomery testified that after again advising the defendant of his rights, the defendant made a complete oral confession of the murder of Mrs. Nixon. Montgomery said that he and the defendant were alone at the time. Defendant told of throwing away the butcher knife and the coin purse after taking $15.00 from it, but he did not admit raping the victim. Defendant Irving and the accompanying officers then returned to Biloxi, arriving about 7:30 P.M.
An affidavit was signed and Irving was formally charged with the murder of Mrs. Nixon.
In the company of police officers, Irving retraced his route and pointed out to the officers where he had thrown the large butcher knife. The knife was found where Irving had indicated it was thrown, and a picture was taken of it where found. The defendant continued along the route he had taken on the night of the murder and pointed out where he had thrown Mrs. Nixon’s ■coin purse. The coin purse was found where he indicated that he had thrown it, .and there were several papers still in it positively identifying it as Mrs. Nixon’s ■purse. Pictures of the coin purse were taken in the exact spot where it was found.
That Monday night, November 22, 1965, about 9:30 P.M., the defendant was brought before a justice of the peace and was bound over to await the action of the grand jury. An indictment was returned by the grand jury on February 16, 1966, and on February 17, 1966, Honorable Ebb J. Ford, Jr. was appointed by the circuit court to represent the defendant, he having indicated to the court that he was not able to employ an attorney to represent him.
The defendant, on the same day, was arraigned and plead “not guilty” on the advice of his counsel. On the same day, February 17, 1966, his counsel by written motion requested the court to require the district attorney and the county attorney to furnish him with copies of statements of witnesses heretofore taken and copies of any statements taken by any persons from the defendant himself. The Circuit Judge thereupon entered an order requiring the State of Mississippi to furnish copies of the statements of witnesses and the defendant to the attorney for the defendant.
Counsel for the defendant moved for a continuance of the case alleging that he had not been promptly furnished copies of the statements of witnesses. The Circuit Judge on February 25, 1966, continued the case and set it for trial on April 20, 1966, being the First Wednesday of the April 1966 Term of Court.
The two day trial resulted in a verdict of guilty as charged, and the Circuit Court sentenced the defendant to be put to death in the manner provided by law. The' defendant has appealed his conviction' to this Court.
Defense counsel lists 13 assignments of error, but in his main brief and rebuttal brief concentrates on only one of these assignments of error. Counsel for the defendant argues very vigorously that the Circuit Court erred in admitting the testimony of Detective Leslie Montgomery “concerning an alleged confession and actions of the Defendant after arrest, accusation of murder, and -incarceration for three days at Biloxi, and at Jackson, Mississippi some one hundred seventy-five (175) miles distant from- Biloxi.” We feel that *688 this is the only assignment of error that merits extended discussion.
The uncontradicted and positive testimony is that shortly after the defendant’s arrest about 11:00 A.M. on Saturday, November 20, 1965, that his relatives were permitted to see him and bring him a change of clothes, and defendant in fact changed his clothes. The clear, undenied and uncontra-dicted testimony is:
“Q. Mr. Montgomery, did you advise him anything with reference to his right to have an attorney?
A. Yes, I did, before I started talking to him, when he was first brought into the Biloxi Police Department, and he stated that he didn’t feel he needed one at the time.
Q. With reference to some of his relatives coming to see him, didn’t they bring him a change of clothes within about two hours when he was in the Biloxi Police Station ?
A. Yes, they did.
Q. They were permitted to see him?
A. Yes.
Q. And he changed clothes ?
A. To my knowledge he did.”
The testimony is uncontradicted that while at the Highway Patrol Headquarters at Jackson about 2:00 P.M. on Monday, November 22, 1965, that the defendant asked to talk to Assistant Chief of Detectives, Leslie Montgomery. Before defendant made any statement, Detective Montgomery advised him clearly and fully of his rights. Montgomery was asked questions and gave answers, as follows:
“Q. Prior to his making that statement, Mr. Montgomery, I will ask you if anyone had used any force or violence on his person?
A. None whatsoever.
Q. Piad you or anyone else to your knowledge made any promise to induce him to make a statement?
A. I did not, and to my knowledge I know of no one that did.
Q. Tell the jury and the Court what you advised him with reference to his rights ?
A. I advised him that he didn’t have to say anything unless he wanted to, that anything he said could be used in a court of law, and that he had a right to legal' counsel, and that I could not promise him' anything and I did not promise him anything.
Q. Did he make a statement to you there in Jackson?
A. Yes, sir, he did.
Q. Was anyone else present when he made that statement?
A. When he made that statement to me I was alone.
Q. Now, Mr. Montgomery, I want to-ask you how long you have known the Defendant?
A. A number of years.”
The above testimony is clear and uncon-tradicted. The testimony, both oral and documentary, is overwhelming that the defendant committed the crime of murder when he stabbed Mrs. Plazel K. Nixon to-death.
The testimony of both Geraldine Favre and Hazel Favre is that the defendant was drinking vodka with them at a beer parlor until about midnight, November 18, 1965; that he was wearing a white shirt and green pair of pants, the uniform of employees of John Gimma, Plymouth dealer on the Gulf Coast, that there was some kind of name stitched on the shirt and that he told them that he worked for John Gim-ma; that he left them between midnight and 12:30 A.M.
*689 The special agent of the FBI from the crime laboratory in Washington, D. C., testified that Mrs. Nixon had Type “B” blood, that this type is possessed by about ten per cent of the population, that the blood on the rug immediately under the victim was Type “B” blood and that the blood on both legs of the green pants that the defendant was wearing the night of the murder was Type “B” blood.
Another FBI agent from the crime laboratory in Washington, a specialist in shoe and tire impressions, testified that the left shoe of the defendant, which was picked up from the shoe repair shop the day after the murder, and before it had been half-soled, matched the plaster of paris cast of a footprint in the flower bed directly under the bedroom window of the victim. The agent testified that the size, shape and worn places of the sole of this left shoe of the defendant matched the impressions of the cast. The large butcher knife and the coin purse of Mrs. Nixon, from which $15.00 had been taken, were found exactly where the defendant pointed out that he had thrown them.
The autopsy report of Doctor Floyd L. Ezell, the pathologist, supports and corroborates the way and manner Mrs. Nixon was killed as detailed in the confession of the defendant. The location of her body as described by the police officers bears out the details of the confession.
We have detailed only a part of the proof that the jury had before it, but we feel that the testimony listed is sufficient to show that the jury was justified in returning the verdict that they did return.
The evidence is clear, positive, un-contradicted and undenied that no promises of any kind were made to the defendant; that no force or coercion was used; that the rights of the defendant were fully explained to him; that he understood his rights; that he intelligently and voluntarily waived his right to counsel during his interrogation before arraignment; that he was not held incommunicado but on the contrary was allowed to see his relatives; and finally that his confession was free and voluntary in every respect.
We feel that if there were ever a case where the defendant was afforded his full constitutional rights, that this is it. We feel that the only course open to us, after carefully and maturely considering the record of trial, the exhibits, the able and exhaustive briefs of counsel, is to affirm the judgment of the lower court.
The judgment is, therefore, affirmed and Monday, the 23rd day of January, 1967, is hereby fixed as the date for the execution of the sentence and the infliction of the death penalty in the manner provided by law.
Affirmed and Monday, January 23, 1967, set for date of execution of death sentence.
All Justices concur.