Gerald Henry IRVING, Jr., Applicant,

v.

C. E. BREAZEALE, Superintendent of
Mississippi State Penitentiary
et al., Respondents.

Civ. A. No. 3360.

United States District Court
S. D. Mississippi, S. D.

March 13, 1967.

Ebb Ford, Jr., Gulfport, Miss., for applicant.

Boyce Holleman, Gulfport, Miss., Joe T. Patterson, Atty. Gen., State of Mississippi, Jackson, Miss., for respondents.

WILLIAM HAROLD COX, Chief Judge.

The applicant filed his application for a writ of habeas corpus in this district where he was convicted of the crime of murder, against the sheriff of Harrison County and the superintendent of the state penitentiary where he is confined in maximum security awaiting the execution of the death sentence on February 17, 1967.[1] His verified application[2] stated that he was convicted on evidence secured by the state in violation of his vested rights; that he was denied counsel and that a statement of the details of the crime attributed to him was procured without apprising him of his right to counsel, and affording him competent counsel for his representation, and without advising him that he had a right to remain silent, and that any statement he made about the crime would be used in evidence against him. Objections to the introduction of the lethal knife in evidence and other articles pointed out by the applicant as having been involved in the crime and pointed out by him to the officers was heard by the state court in the absence of the jury.[3] The trial judge overruled such objection without making any finding of facts or conclusions of law. The applicant filed a petition with Honorable James P. Coleman, one of the judges of the United States Court of Appeals for the Fifth Circuit, for a stay of his execution on February 17 until the United States Court of Appeals could hear an appeal on its docket set for April 14, involving a decision of this Court denying an order to produce documents and evidence which the state appeared and voluntarily offered to produce and did produce in the original state case. Those questions are completely moot and Judge Coleman denied such stay, but suggested that the matter presented should receive a full plenary hearing by this Court on application for habeas corpus.[4] That application was presented and a show cause order was entered and a full scale plenary hearing was ordered for the applicant. The applicant was brought some three hundred miles from Parchman to Biloxi for such hearing and was invited by the Court to testify only as to any violation of his constitutional rights without touching upon any question of his guilt or innocence of the crime. The applicant voluntarily elected to remain silent and not testify although the Court taunted in custody for investigation of some

1. By order of this Court dated February 11, 1967 on this application, execution of the death sentence set for February 17, 1967 was stayed, and respondents were directed to produce applicant in the United States Courtroom at Biloxi, Mississippi on February 18, 1967 at 9:00 A.M. for hearing. The applicant was adjudged a pauper and the Clerk of this Court was ordered to issue any necessary process for witnesses requested by applicant at that time without cost to him. A full plenary hearing was set at Biloxi for the convenience of many witnesses said by applicant's attorney to reside in Harrison County. The Court and its personnel went to Biloxi on this occasion solely to provide a full plenary hearing on these important constitutional questions which it was thus assured would be developed.

2. Significantly, this application was signed by court appointed counsel and was sworn to only on information and belief. The record before this Court is completely silent on most of the important facts.

The application is replete with conclusions.

3. The applicant objected to any testimony involving his confession and the introduction in evidence of articles relating to the crime which were pointed out by the applicant. No proof of the facts or circumstances supporting applicant's contentions was offered. That objection was overruled without a finding or conclusion. Later in the trial in the state court, applicant moved to exclude such evidence on the grounds that his Fifth Amendment, Sixth Amendment and Fourteenth Amendment rights had been violated. No proof was submitted in support of that motion. It was overruled.

4. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 has no application to the facts and circumstances here where there was no disputed testimony to be resolved on the constitutional questions. But a plenary hearing was nevertheless ordered and scheduled by this Court in this case.

his court appointed counsel about request-ing such a hearing and then remaining silent. The applicant offered in evidence the two volume transcript of the record of the criminal trial in the state court which was before the Supreme Court of the State of Mississippi. The decision of the Supreme Court in this case affirm-ed this conviction and made an elaborate finding of the facts from the record.[5] The applicant on this application invoked the rule of sequestration and was ad-monished by the Court that such rule in a civil case required him to testify first, if at all. Counsel then stated that the applicant did not intend to testify. He thereupon called three witnesses. Their testimony established that the applicant was under arrest and burglaries in the community when he was interrogated about the murder of Mrs. Hazel K. Nixon on November 19, 1965. The applicant introduced this two volume Supreme Court record as the bal-ance of his evidence on this full scale ple-nary hearing which this Court announc-ed at the outset that it would hear all day Saturday (February 18) and into the night if necessary; and would resume hearing any further testimony at Jack-son, commencing at 9:00 A.M. on Monday morning, February 20, 1967. When the applicant introduced this record evidence he rested this case about 10:20 A.M. after a trial which had then lasted about an hour, including an intermission re-

quested by applicant.[6] When the appli-cant rested, the respondents rested; whereupon the Court heard oral argu-ments of counsel and permitted inde-pendent briefs to be filed within ten days. The Court has carefully examined and analyzed the testimony and the evi-dence and presently makes its findings and conclusions.

## FINDINGS OF FACT

The victim was murdered at midnight on November 19, 1965 in her home at Biloxi, Mississippi. The details of this gruesome crime are not important to a discussion of the relevant facts shedding light on the constitutional rights of the applicant for a determination of the sole question involved in this proceeding as to whether or not any such rights of the applicant were violated.

The applicant was arrested by the police of Biloxi on November 20 for interrogation as a suspect involved in some burglaries in the Biloxi community. He was interrogated only a few minutes through that weekend by an investigator about this capital crime in which he denied any involvement. He had no attorney prior to the appointment of present counsel by the Circuit Court on the 17th day of February 1966. The applicant was duly and timely informed by experienced investigators that he had a right to court appointed counsel.[7] The applicant was then a twenty-two year old

---

5. The case in the Supreme Court of Mis-sissippi is styled Gerald Henry Irving (sic) v. State of Mississippi, 192 So.2d 686.

6. No proof was offered by applicant or on his behalf to show that he had ever re-quested or even made known any desire for an attorney at any time during this proceeding. He never denied that he told the officers on more than one occasion that he did not want or need an attorney. He did not deny that he was told at the very outset of the investigation and on more than one occasion that he had the right to remain silent and did not have to answer any questions asked him and that if he answered, that his answers would probably be used against him. He did not deny or have denied on his be-half that he voluntarily agreed to go to

Jackson for a lie detector test; that he voluntarily expressed his desire to talk with Investigator Montgomery and that he voluntarily confessed the crime and agreed to and did show Montgomery the lethal knife which he had thrown away and the purse of his victim which he had likewise discarded. The record in the state court which was offered by applicant in evi-dence affirmatively shows those facts and circumstances.

7. The verified application of the applicant in paragraph 20 on page 5 expressly ad-mitted that prior to his preliminary hear-ing before the magistrate on the evening of November 22, 1965 that the officials then offered applicant a court appointed attorney if he desired one. He did not desire an attorney at that time.

intelligent male with an eleventh grade high school education. He knowingly and understandingly advised the officers that he did not need or want an attorney. These officers advised applicant on more than one occasion that he had the right to remain silent and answer no questions which they asked him and told him that any answers which he gave in response to their questions could and would be used against him.

No threats or intimidation or force of any kind was used against this applicant by anybody while this crime was being investigated.

The applicant voluntarily allowed the officers of Harrison County to take him to Jackson for a lie detector test on November 22, 1965. The record does not disclose whether or not this test was given the applicant, but about 2:00 P.M. on that date he told the officer (Sam Ivy) that he would like to talk to Investigator Montgomery, who had known applicant many years. The applicant then voluntarily confessed to the crime and voluntarily agreed to and later that evening did show the investigator the lethal knife which he used to kill his victim and which he threw away soon thereafter. Upon arrival back at Biloxi at about 7:30 P.M., pursuant to his understanding with Montgomery at Jackson, and by way of verification and as a part of his confession, applicant led the officers to the knife and the purse and other articles taken from the victim's home after the crime. Immediately thereafter, applicant for the first time was charged that evening with the crime of murdering this victim. This series of incidents thus concluded the investigatory stage of this crime, and applicant was thereupon immediately charged with this crime and was given a preliminary hearing before a magistrate in Biloxi at 9:30 that evening. He never requested or ev-

en so much as indicated a desire for an attorney, or to remain silent, even after a full explanation of all of his constitutional rights. Applicant was indicted by a grand jury for this crime on February 16, 1966. The state court appointed competent and experienced counsel for him in the person of his present counsel in this case on February 17, 1966.

The case was set for trial on its merits in the state court in February 1966, but his counsel requested and obtained a delay of trial until April 20, 1966 to enable him to make the necessary investigation and research for adequate defense. At the trial when the state investigators sought to testify about applicant's statements to them which involved him in this crime, and when they sought to testify about finding these pieces of damaging evidence with his assistance, the applicant's attorney strenuously objected to its competence as being obtained in violation of his constitutional rights.

This evidence and testimony was received and heard by the Court in the absence of the jury. The applicant did not testify in opposition to any fact, or circumstance narrated by the state officers. At the conclusion of such testimony, the trial judge simply overruled the objection. He made no express finding or conclusion, but simply determined that the objection was without merit. The applicant sought and obtained from this Court an order for a full plenary hearing of all evidence and testimony, touching such question of the constitutional rights of the applicant under such circumstances.[8] There was thus no controverted question of fact before the state court to give rise to the necessity for any findings and conclusions under such circumstances merely on an objection to evidence when the applicant, and no other witness on his behalf, disputed or contradicted anything stated by such witnesses for the state.

8. This Court entered two show cause orders in this case for clarification. The orders were designed to make it clear that the execution of the applicant was stayed, and that he should have a full plenary hearing before this Court to enable him to prove that his Fifth Amendment, Sixth Amendment or Fourteenth Amendment rights were violated in this conviction. Such proof before this Court was not forthcoming and did not materialize.

■ In sum, this Court finds as a fact that this application in its entirety is without merit. The applicant simply has not shown by a preponderance of the evidence, or by any substantial evidence that any constitutional right of his was violated, or impinged upon at any time in any manner during the progress of this criminal case from beginning to end. Applicant was timely and properly advised of his right to court appointed counsel if desired. He was timely and properly advised of his right to remain silent and answer no questions asked him by the investigators, and was duly warned that any answers he gave to their questions would probably be used against him. There is no evidence, or any fair inference from any evidence before this Court that this applicant was forced or intimidated or compelled in any manner or by any means to confess this crime, or to point out the knife and other articles to the investigators. This Court now finds from the evidence before it in this case that this confession and this location of these damaging articles for the investigators was entirely voluntary on the part of the applicant in every sense of the word and with full knowledge of his rights.

The complaint that officials withheld evidence from him was found by this Court in another proceeding here to be without foundation in point of fact. The state officers appeared in this Court and advised the Court in such former proceeding that they had furnished applicant's attorney with all evidence in their possession, or under their control and would continue to do so without any process from any court. There was no dispute or contradiction of that statement either before this Court in that proceeding here, or in this record now before the Court.

## CONCLUSIONS OF LAW

■ The applicant was tried for murder and sentenced to death by the Circuit Court of Harrison County, Mississippi, which is within the Southern Division of the Southern Judicial District of Mississippi.[9] The applicant appealed his conviction to the Supreme Court of the State of Mississippi where it was affirmed.[10] Thereafter the applicant requested the state Supreme Court to allow him to file a petition for a writ of Error Coram Nobis and that application was denied. The applicant has exhausted all effective remedies under state law and has now applied to this Court for habeas corpus.[11] This Court has full jurisdiction of the parties and the subject matter of this habeas corpus proceeding.

■ This civil proceeding does not involve the guilt or innocence of the applicant of this crime, but we are concerned here only with the question as to whether or not the Fifth Amendment, the Sixth Amendment or the Fourteenth Amendment rights of this applicant were violated or impinged upon by the state trial court in convicting him of that crime. The facts and circumstances in this case show without dispute that it is not an Escobedo case.[12] It is likewise not a Miranda case.[13] This case was tried before the Miranda decision which has no application thereto.[14] The transcript of the testimony before the state trial court shows clearly and without dispute that applicant, as an educated and intelligent individual, was advised and knew that he had the right to court appointed counsel to represent him at all stages of

---

9. This Court has jurisdiction of this application although the applicant is in custody in the Northern Judicial District of Mississippi. 28 U.S.C., 1958 ed., § 2241 (d).

10. Gerald Henry Irving v. State of Mississippi, Miss., 192 So.2d 686.

11. Bell v. State of Alabama, (5 CA), 367 F.2d 243.

12. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

13. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

14. Hackathorn v. Decker, (5 CA), 369 F.2d 150.

this state proceeding, and that he had the right to remain silent and say nothing and that anything that he said or did would have to be voluntary and that it could and probably would be used against him. With this trial record, which applicant himself introduced as his own evidence before this Court in this proceeding, he stated through his counsel to this Court that he did not wish to testify even on the only question before the Court in this proceeding. He voluntarily and knowingly remained silent in this Court under such facts and circumstances, even after this Court invited him to tell the Court of any violation of his constitutional rights, or suffer the presumption that if he testified that it would be hurtful to him.[15]

■ All of the requirements of Townsend v. Sain, supra, were fulfilled by providing a full plenary hearing in this case to the applicant. There is no requirement in Mississippi state practice to impel a judge on a mere objection to testimony, or on a motion not supported by disputed testimony to articulate any findings and conclusions thereon. If there had been any such practice or legal requirement, it would not have been necessary in this case where neither applicant, nor any witness in his behalf

testified, and where the testimony on the question presented was not disputed.

The applicant offered no proof on the other matters mentioned in his application, presumably because they were mooted by the state having timely furnished such information to the applicant prior to the trial in the state court as was shown to the entire satisfaction of this Court in a prior proceeding here.

The applicant was arrested and booked, indicted, tried and convicted and sentenced to death as Gerald Henry Irving. The state court appointed an attorney to represent the defendant as Gerald Henry Irving, Jr. Gerald Henry Irving, Jr. after pleading not guilty was remanded by the state court to custody of the sheriff. Gerald Henry Irving moved the Court to require all statements of witnesses to be furnished his attorney. The state court sustained the motion and ordered such statements furnished Gerald Henry Irving, Jr. and his present attorney. Gerald Henry Irving, Jr. moved for and was granted a continuance until April 30. The state filed a motion for a subpoena duces tecum to get the blood type of Gerald Henry Irving from the hospital at Parchman. The attorney for Gerald Henry Irving, Jr. consented to that motion and it was sustained. The District Attorney moved for a

---

15. United States v. Roberson, (5 CA), 233 F.2d 517: "Unquestionably the failure of a defendant in a civil case to testify or offer other evidence within his ability to produce and which would explain or rebut a case made by the other side, may, in a proper case, be considered as a circumstance against him and may raise a presumption that the evidence would not be favorable to his position," citing: Local 167 International Brotherhood of Teamsters v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804; Anderson v. United States, (5 CA), 1950, 185 F.2d 343; Williams v. United States, (5 CA), 1952, 199 F.2d 921; and Kent v. United States, (5 CCA), 1946, 157 F.2d 1; and in United States v. Johnson, (5 CA) 288 F.2d 40, it is said: "Failure of a part to produce relevant and important evidence within its peculiar control raises the presumption that if produced, the evidence would be unfavorable to its cause," citing: Kirby v. Tallmadge, 1895, 160

U.S. 379, 16 S.Ct. 349, 40 L.Ed. 463; Foust v. Munson S.S. Lines, 1936, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49; Interstate Circuit v. United States, 1939, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610, 2 Wigmore on Evidence, 3rd ed., § 285 et seq. The rule is applicable even in criminal cases. Ford v. United States, (5 CA), 1954, 210 F.2d 313, 317; and in Allstate Finance Corporation v. Zimmerman, (5 CA), 330 F.2d 740, 1964, it is said: "Where the burden of proof of a negative fact normally rests on one party, but the other party has peculiar knowledge or control of the evidence as to such matter, the burden rests on the latter to produce such evidence, and failing, the negative will be presumed to have been established," citing: Campbell v. United States, 365 U.S. 85, 96, 81 S.Ct. 421, 5 L.Ed.2d 428; Henry Hanger & Display Fixture Corp. v. Sel-O-Rak Corp., (5 CA), 270 F.2d 635, 642; 31A C.J.S. Evidence § 113, pp. 190–192.

special venire in this capital case to try Gerald Henry Irving, Jr. as the defendant for murder. That motion was sustained and the attorney for Gerald Henry Irving, Jr. was ordered to be furnished a copy of such venire. The summons for the venire was to try the defendant as Gerald Henry Irving, Jr. The sheriff served a copy of the summons for the venire on Gerald Henry Irving, Jr. and his attorney on the application in this case. The record shows that the state court convened on April 20 and continued through April 21 in trying the case of State of Mississippi v. Gerald Henry Irving, Jr., No. 13,095 on the docket of the Circuit Court of Harrison County, Mississippi, in which case Gerald Henry Irving was tried and convicted and sentenced to death. Applicant's attorney here represented the applicant during and throughout the trial of that criminal case in the state court and on appeal. At the end of the first day of trial on April 20, a "partial" trial order was entered in the case styled State of Mississippi v. Gerald Henry Irving, No. 13,095 showing that it was a murder trial and showing the defendant as Gerald Henry Irving and giving the names of the jurors and continuing the case until the next day for completion. The three instructions for the state styled the case as State of Mississippi v. Gerald Henry Irving, No. 13,095. The four instructions for the defendant styled the case as State of Mississippi v. Gerald Henry Irving, Jr., No. 13,095. The jury returned a verdict on a blank piece of paper saying that they found the defendant guilty as charged. The final judgment, styling the case as State of Mississippi v. Gerald Henry Irving, No. 13,095, designated the defendant as Gerald Henry Irving and sentenced Gerald Henry Irving to death. Gerald Henry Irving through court appointed counsel moved for a new trial. Gerald Henry Irving gave notice of appeal through the same counsel. The certificate to that notice of appeal signed by the same counsel designates the appellant as Gerald Henry Irving, Jr. Defendant's petition to the state Supreme Court for appeal was interposed on behalf of Gerald Henry Irving. Gerald Henry Irving, Jr. made an affidavit for appeal as a pauper. The state entered its appearance to the appeal in the state court by instrument styling the case as State of Mississippi v. Gerald Henry Irving, Jr., No. 13,095. The record from the trial court was certified to the Supreme Court under the style of State of Mississippi v. Gerald Henry Irving, Jr. It was docketed in the Supreme Court as State of Mississippi v. Gerald Henry Irving and was affirmed under that style and the death sentence was fixed by the Court for Gerald Henry Irving. G. H. Irving, Jr. filed a petition with the Supreme Court for permission to file a writ of Error Coram Nobis and that petition was denied. The applicant appeared here as Gerald Henry Irving, Jr. and complains of the validity of his conviction of the crime of murder in this case. He has never raised the question of mistaken identity at any time even after this Court directed counsel for both sides to enlighten the Court as to the identity of this convict. Gerald Henry Irving is the father of this applicant and lives and works in Biloxi. The applicant was thus tried and convicted and sentenced to death with the alternating use and failure to use the suffix "Jr." with his name. It is the applicant who is and has been in custody in maximum security at Parchman awaiting the death sentence. Applicant was born in Biloxi on October 23, 1943 and has lived and worked in Biloxi all of his life. The extreme emergency involved in this case occasioned the Court to notice this discrepancy in names of its own accord under Civil Rule 54(c).

■■ The Court finds as a fact on this record that the applicant uses the name of Gerald Henry Irving and Gerald Henry Irving, Jr. and is one and the same person in this record. It was the applicant and his present attorney who has engaged in this state trial and not the father of the applicant; and that the applicant has never made any point of any mistaken identity at anytime during the state trial or here. It is, therefore,

the conclusion of this Court as a matter of law, that the absence of the suffix "Jr." on the indictment and in the judgment of conviction and sentence is immaterial and that the applicant is not held or under sentence of any void judgment. The conviction and sentence is valid as a principle of universal recognition as a matter of law.[16]

The Court accordingly holds for all purposes of that criminal case and for all purposes of this case that there exists no case of mistaken identity, and that the applicant here has been duly and legally tried and convicted of the crime of murder under the name of Gerald Henry Irving; and that applicant by that name has been duly sentenced to die as punishment for that crime. This Court finds no basis or constitutional justification for its intervention in the execution of such valid processes of the state court.

The applicant has thus not shown to this Court by a preponderance of the evidence that any constitutional right of his was violated in the trial of this case. It is not even suggested that he did not have a fair trial in an atmosphere of openmindedness in an honest search for the truth as to his guilt or innocence of this crime. Counsel cites and relies on

Chapman & Teale v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, decided by United States Supreme Court February 20, 1967 but the facts and circumstances there find no analogy here. Nobody forced applicant to say anything or point out any evidence in this case. All of the officers who testified in the state court and who had any part in the investigation of this crime were present before this Court and available to applicant and his counsel, if they knew anything to support this application. That case has no application to any point or question in this case. The application for this writ of habeas corpus is thus without merit and will be denied.[17] A judgment accordingly will be entered by the Court.

The judgment will provide that the outstanding stay of execution will remain in effect for five days after this date to enable the applicant to take an appeal to the United States Court of Appeals for the Fifth Circuit, as a pauper and without payment of costs; and upon his perfecting such appeals, that such execution shall be and remain stayed until the United States Court of Appeals for the Fifth Judicial Circuit shall have acted thereon, and thereafter until the further orders of this Court.

16. In 65 C.J.S. Names § 5b, p. 8 states: "The suffix 'Senior,' 'Junior,' 'second' or a word of similar import, added to a name, is ordinarily not a part of the name, although in appropriate circumstances it may be required to be so regarded. *It is not necessary to add it to a person's name in a writ or other legal paper, and to omit or add such appellation or cognomen is harmless error, both in civil and criminal proceedings.*"

27 Am.Jur. § 79 (Indictments & Information) says: "It is the general rule that the suffix, Sr. or Jr., often attached to the name of a person designated in an indictment or information is mere matter of description and forms no part of the person's name, so that the omission or addition of such suffix is immaterial." Cf: United States v. Rodriguez, 195 F.Supp. 513, 515; affirmed (5 CA) 292 F.2d 709. Lambert v. State of Florida, 111 So.2d

68; Adams v. State of Texas, 108 Tex. Cr.R. 314, 300 S.W. 78; McSwain, et al. v. Griffin, 218 Miss. 517, 67 So.2d p. 479; 42 C.J.S. Indictments and Informations, § 265, p. 1287; Chapman v. State of Georgia, 33 Ga.App. 570, 126 S.E. 895; Wilson v. State of Georgia, 67 Ga.App. 404, 20 S.E.2d 433.

17. There is no fact or circumstance or fair inference which can be deduced from anything in this record that would invoke the principles or show a violation of any constitutional right of this applicant under Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. There is no proof here of any pressure or force or intimidation or stratagem employed during custodial interrogation to destroy free will or disparage the voluntary nature and character of what he said to and did for these officers.