Moses ANDERSON, Petitioner,

v.

Louie L. WAINWRIGHT, Respondent.

No. 76–84–Civ–J–S.

United States District Court,
M. D. Florida,
Jacksonville Division.

Report and Recommendation
Sept. 7, 1977.

Opinion Jan. 19, 1978.

Hugh A. Carithers, Jr., (Court Appointed) Jacksonville, Fla., for petitioner.

Wallace E. Allbritton, Asst. Atty. Gen., State of Florida, Tallahassee, Fla., for respondent.

## OPINION

CHARLES R. SCOTT, District Judge.

On September 7, 1977, the Honorable Harvey E. Schlesinger, United States Magistrate, in a thorough and carefully analyzed opinion, found that petitioner's original conviction and sentence of twelve years in 1967 were lawful, and recommended that the petition for a writ of habeas corpus be denied. Six days later petitioner filed written objections to Judge Schlesinger's findings and recommendation. In accordance with Local Rule 6.02, the Court has reviewed the findings and recommendation of Judge Schlesinger, together with the entire record in this case, in considering petitioner's objections.

Judge Schlesinger found that petitioner's second sentence, pursuant to a plea agreement, was not valid and binding. That plea agreement and sentence were entered into after the Fifth Circuit stayed this Court's decision to issue a writ of habeas corpus to petitioner for his original, 1967 conviction. Later, the Fifth Circuit reversed this Court's decision on the merits. The Florida First District Court of Appeal ruled that, as a result of the Fifth Circuit's stay of this Court's habeas corpus writ, the State of Florida had neither the duty, nor the authority, to enter into a plea agreement for another sentence of petitioner. The Fifth Circuit expressly intended its stay order to affect this Court's decision, and not the State of Florida. However, once the Florida First District Court of Appeal determined that the State of Florida lacked authority or obligation to re-sentence petitioner, as a consequence of the Fifth Circuit's stay, the Fifth Circuit accepted, acceded to, and acquiesced in the Florida court's interpretation of the collateral, effect of the Fifth Circuit's stay order.

Therefore, when he objects that a decision of the Florida First District Court of Appeal could not bind this Court, petitioner is correct, but misunderstands the legal posture of this case. It was not the interpreted decision of the Florida appellate court that bound this Court, but rather the later decision of the Fifth Circuit that deferred to, and adopted, the Florida appellate court's ruling. It was the Fifth Circuit's acceptance of the Florida appellate court ruling that incorporated it into the federal law of this case. Hence, this Court is not free to decide differently. This Court is bound, not as a result of the Florida First District Court of Appeal, but as a direct result of the Fifth Circuit's adoption of the Florida appellate court decision.

Petitioner objects to this reasoning, suggesting that the Fifth Circuit's decision to accept and adopt the Florida First District

Court of Appeal's interpretative ruling, was based on mere procedural considerations of federal-state comity, and not on the substantive merits of the state appellate court ruling. The alleged distinction between procedure and substance will not stand up under scrutiny. Insofar as the Fifth Circuit held that this Court's decision to issue a writ of habeas corpus for petitioner's original 1967 conviction was not moot, and then retained its reversal of this Court's decision, the substantive effect of the Florida appellate court's decision was before the Fifth Circuit; and the Fifth Circuit ruled on the merits by retaining its reversal of this Court's decision to invalidate petitioner's 1967 conviction.

■ Petitioner further objects that he has been prejudiced by having to serve the longer, original sentence, because the State of Florida did not comply with the later plea proceedings. The overall thrust of these objections is that the State of Florida is estopped from honoring the original conviction and sentence, and from failing to honor the purported plea agreement in the later plea proceedings. This theory would bar the State of Florida from finding the original conviction and sentence valid and the later plea agreement and plea void. The error in this theory is that a plea agreement is not a contract executed for consideration upon a mutuality of consent; and a variant of promissory estoppel is not available to prevent an invalid plea proceeding from being a nullity, without legal effect.

In a recent decision, the Fifth Circuit has underscored this conclusion in the federal procedural situation. In *Sassoon v. United States*, 561 F.2d 1154 (5th Cir. 1977), the defendant pled guilty on May 31, 1974, to two separate indictments. The next month he was sentenced to six years according to a plea agreement. He filed a motion for post-judgment relief pursuant to 28 U.S.C. § 2255. On September 9, 1975, the district court, without a hearing vacated the May, 1974, conviction and ordered defendant to be allowed to plead anew. One week later, on September 16, 1975, the defendant entered his guilty plea again. Three days after that, however, the government filed a motion to reconsider the September 9, 1975, order that vacated the original, May of 1974, conviction. After studying the government's motion to reconsider for ten days, the district court granted the motion to reconsider, and vacated the September 9, 1975, order that had purported to vacate the original sentence and conviction.

■ On appeal to the Fifth Circuit, the defendant argued that the district court was estopped from vacating the September 9, 1975, order, that set aside his 1974 sentence and conviction, because of his re-arraignment one week after the September 9 order. The Fifth Circuit held that because of the district court's failure to comply with 28 U.S.C. § 2255, the September 9, 1975, order (which vacated the original conviction) was invalid, "and all proceedings that follow from it were likewise void." *Id.* at 1156.

As a result of this interpretation of the procedural imbroglio below, the September 9 order, the re-arraignment, and the government's motion for reconsideration are of no legal significance. *Id.* at 1156–57.

Because the later plea proceeding was without authority or legal effect, the plea agreement underlying it had no obligatory effect either. Consequently, the question of *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), is not a real issue. While it is true, under *Santobello v. New York, supra*, that a guilty plea induced by, and relying upon, promises and a plea agreement is invalid unless those promises are fulfilled, in this case there was no valid plea agreement nor any valid proceedings at which petitioner's guilty plea was rightly entered.

Petitioner contends that this result is unjust and he has been unjustly prejudiced. Whatever else justice might be, the best notions of it which rational minds can apprehend are as it is expressed in law; and the finest experience of justice in the history of mankind is the dispassionate and impartial adherence to the rule of law. Cir-

cumvention and evasion of the binding obligations of the rule of law are not justice. That petitioner is not free from incarceration, although an ultra vires plea agreement would have produced such a result, does not amount to prejudice. That argument supposes that the failure of a counterfactual situation to be the existing situation necessarily constitutes legally significant prejudice. To be sure, if petitioner had not been convicted and sentenced at all, he would not be incarcerated either. But the Fifth Circuit absolutely foreclosed the possibility of that counterfactual hypothesis becoming a reality when it reversed this Court's invalidation of petitioner's original conviction. The fact that petitioner is presently incarcerated, despite the possibility that under a counterfactual situation he would not be incarcerated, does not mean that petitioner is suffering from a prejudice that warrants release from his present confinement. His original conviction is lawful, and he is lawfully serving at present the sentence from that conviction.

The Court expressly incorporates, and adopts, the careful analysis of Judge Schlesinger's findings and recommendation. Based on them, and on the reasons set forth in this opinion, the petition for writ of habeas corpus must be denied and this case dismissed.

## REPORT AND RECOMMENDATION

HARVEY E. SCHLESINGER, U.S. Magistrate,

Petitioner Moses Anderson, an inmate at Lake Butler Reception and Medical Center, Lake Butler, Florida, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.

## FACTS

On August 22, 1967, petitioner was convicted of robbery and aggravated assault after trial by jury in the then Criminal Court of Record for Duval County, Florida. He was sentenced to a twelve-year term of imprisonment. On March 2, 1971, this Court, by a writ of habeas corpus, entered an order which would have vacated petitioner's conviction and given the State sixty days within which to retry him. However, respondent, through the office of the Attorney General, appealed the order of this Court granting the writ and moved the United States Court of Appeals for the Fifth Circuit for a stay of this Court's order pending appeal. On April 27, 1971, the Court of Appeals granted respondent's motion for a stay, and on November 3, 1971, it reversed this Court's order of March 2, 1971.

On September 7, 1971, the State, through the office of the State Attorney, returned petitioner to his original trial court. The office of the State Attorney advised neither the office of the Attorney General nor petitioner's court-appointed counsel in the habeas corpus proceeding of its intended action. Pursuant to a plea bargain, petitioner was rearraigned and resentenced upon Count I of the original information to a five-year term of imprisonment. The five-year commitment gave petitioner credit for the time he had served on the prior twelve-year sentence.[1] Count II of the original information, the assault charge, was dismissed.

On December 7, 1971, petitioner's court-appointed counsel in the habeas corpus pro-

1. The trial court's order recited that petitioner would be given credit "for the time while confined in the Duval County Jail," but the transcript shows that credit for all time served on the twelve-year sentence was intended:

The Court: In this case, Mr. Shorstein, if you recommend five years with credit for jail time—are we—what is the date of it?

Mr. Shorstein (Assistant State Attorney): Your honor, we agreed with credit from the time of sentencing, which was August 22, 1967. . . . I think this will actually get the defendant out.

\* \* \* \* \* \*

The Court: Mr. Anderson, I think probably all factors being considered, it is a good disposition, and that's going to be the judgment and sentence of the court, that you serve a term of five years in the State Prison with credit for the time served, that is, five years beginning as of August 22nd, 1967. And I would hope, Mr. Anderson, that when you get out, that you put to good use the obvious intelligence you have. I hope I don't see you back down here again.

Defendant Anderson: I hope you don't too, Your Honor. And I hope not to come this way again.

ceedings filed with the Fifth Circuit a suggestion of mootness. He argued that the appeal from this Court's grant of habeas corpus relief was moot because (a) petitioner had been rearraigned and resentenced under the terms of a plea agreement even though a stay of this Court's order had been granted, and (b) petitioner had already served sufficient time to satisfy the five-year commitment. On December 20, 1971, respondent filed a response to the suggestion of mootness. Respondent admitted that petitioner was rearraigned and resentenced and that he had already served sufficient time to satisfy the five-year commitment. Respondent contended, however, that because the Fifth Circuit had granted its motion for a stay pending appeal, the rearraignment and resentencing proceedings of September 7, 1971, were a nullity, and that petitioner's original twelve-year commitment was still in force. Respondent concluded that the suggestion of mootness should be overruled.

At the time the suggestion of mootness and the response to it, were filed, petitioner was still being held in custody because of confusion regarding the amount of credit he was to receive on the new five-year commitment.[2] He therefore filed pro se, on December 14, 1971, a petition for a writ of habeas corpus in the First District Court of Appeals of Florida. On February 22, 1972, the Fifth Circuit Court of Appeals entered an order staying consideration of the suggestion of mootness until the First District Court of Appeals had ruled upon the validity of the September 7, 1971, rearraignment and resentencing proceedings. The Fifth Circuit stated:

"Since this State proceeding presents the identical issue as [is] now before this Court, the interests of comity dictate that this Court stay further proceedings or

decision herein until the State tribunal takes final action. . . .

"Attention of the parties is directed to the fact that this Court has never stayed any proceeding against petitioner-appellee in any State court or by or under the authority of the State for any matter involved in this habeas corpus proceeding. The sole and only stay order in these proceedings, which was issued April 27, 1971, stayed the operative effect of the writ of habeas corpus issued by the United States District Court for the Middle District of Florida. *See* 28 U.S.C.A. § 2251, and particularly the final sentence thereof." [3] No. 71–1649 (Summary Calendar)

Thereafter, on March 7, 1972, the First District Court of Appeals of Florida denied the petition for a writ of habeas corpus, ruling that the stay of this Court's order of March 2, 1971, and the subsequent reversal thereof by the Fifth Circuit Court of Appeals rendered the rearraignment and resentencing proceedings of September 7, 1971, null and that petitioner's twelve-year sentence of August 22, 1967, was valid. Then, on March 27, 1972, the Fifth Circuit entered an order stating that "[i]n view of order entered March 7, 1972, by the District Court of Appeals for the 1st District of the State of Florida, the suggestion of mootness heretofore filed in this court is overruled." On January 27, 1976, petitioner filed the present petition for a writ of habeas corpus.

### POSITION OF THE PARTIES

Petitioner contends that he is illegally incarcerated because the Fifth Circuit Court of Appeals' stay order of April 27, 1971, stayed action by this Court only and not any collateral state court proceedings. Thus, the rearraignment and resentencing

---

**2.** See note 1, *supra.*

**3.** 28 U.S.C. § 2251 provides:

"A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any

State for any matter involved in the habeas corpus proceeding.

"After the granting of such a stay, any such proceeding in any State court or by or under the authority of any State shall be void. *If no stay is granted, any such proceeding shall be as valid as if no habeas corpus proceedings or appeal were pending.*" [Emphasis supplied.]

of petitioner in state court on September 7, 1971, were valid. He also argues that this Court should exercise its equitable powers to order that the plea agreement, in accordance with which petitioner was rearraigned and resentenced, be specifically performed. Respondent, on the other hand, argues that (a) in view of the Fifth Circuit's stay order, the rearraignment and resentencing of petitioner was a nullity; and (b) therefore petitioner is obligated to serve his original sentence, imposed on August 22, 1967.

## LAW AND REASONING

### I

The principal issue presented by this case is whether, as a result of the Fifth Circuit's April 1971 stay order, the proceedings at which petitioner entered his guilty plea were valid and legally effective. To answer that question, it is necessary to examine both the direct, intended effect of the Fifth Circuit's stay order and the collateral effect it was given by the First District Court of Appeal of the State of Florida.

### A. Intended Effect of Fifth Circuit's Stay Order: No Stay of State Court Proceedings.

In its order of February 22, 1972, the Fifth Circuit expressly declared that the effect of its stay order was to prevent the writ of habeas corpus that was issued by this Court from vacating petitioner's original conviction and sentence, not to stay any state court proceedings. The Fifth Circuit premised its view of its own stay order on "the interests of comity," a notion that originated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Supreme Court articulated the general principle that national policy forbids interference by federal courts with state criminal proceedings.

▉ Insofar as it is based on the notion of comity, that principle represents

" . . . a proper respect for state functions, a recognition of the fact that

the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44, 91 S.Ct. at 750, 27 L.Ed.2d at 675.

The principle is not absolute, however: a demonstration of "great and immediate" irreparable injury may justify the exceptional remedy of injunctive relief. *Id.* at 46, 91 S.Ct. at 751, 27 L.Ed.2d at 676.

Such irreparable injury was not shown in the present case. The State of Florida made neither an argument nor a showing that it would sustain irreparable injury if the resentencing of petitioner in state court were not stayed. In fact, a guilty plea and resentencing is ordinarily advantageous to the state. The confusion resulting from the failure of the state attorney (involved in reaching a plea agreement for petitioner's resentencing) to notify the State Attorney General (involved in appealing the adverse decision of this Court to the Fifth Circuit) is a communication breakdown attributable to the state itself. An attempt by the state to justify a request for equitable federal intervention against itself is absurd. The state cannot invoke federal intervention to forestall the disadvantageous consequences of its own error.

Under 28 U.S.C. § 2251,[4] the Fifth Circuit could have issued a stay of any proceedings against petitioner by the State of Florida. *Irving v. Breazeale*, 400 F.2d 231, 236–37 (5th Cir. 1968), *aff'g in part* 265 F.Supp. 116 (S.D.Miss.1967), *and remand'g for further consideration of an issue by the district court, and staying execution proceedings against petitioner by the state pending the district court's consideration; Brent v. White*, 398 F.2d 503, 507 (5th Cir. 1968), *aff'g* 276 F.Supp. 386 (E.D.La.1967), *but staying execution proceedings against petitioner by the state pending consideration by the state courts of a previously unraised issue; Whitney v. Wainwright*, 332 F.2d 787, 788 (5th Cir. 1964), *vac'g and remand'g*

---

4. See note 3, *supra.*

*for further consideration by the district court and staying execution proceedings against petitioner by the state; Whitney v. Wainwright,* 339 F.2d 275, 276 (5th Cir. 1964), *aff'g, but extend'g stay of execution proceedings against petitioner for 30 days pending state courts' consideration of newly raised grounds for reversal of petitioner's conviction.* Such a stay would have restrained any proceedings against petitioner that would have altered his legal status, pending further consideration of that status.

 In any event, the Fifth Circuit plainly did not intend any direct stay of state court proceedings by its order of April 27, 1971, which stayed the operation and effectiveness of this Court's earlier grant of a habeas corpus writ for petitioner. This Court cannot hold otherwise. A statement by the Court of Appeals about the intended effect of its own order is controlling, notwithstanding respondent's invitation to this Court to make a contrary assessment. Hence the state proceedings in which petitioner pled guilty and was resentenced were not nullified as a direct, intended consequence of the Fifth Circuit's stay order.

### B. Direct Effect of Fifth Circuit's Stay Order on the State of Florida: No Duty Imposed by this Court's Order.

 Despite the Fifth Circuit's explanation of the direct effect intended by its stay order of April 1971, it does not follow that the petitioner's resentencing in September of 1971 was valid. While this Court's March 1971 order, vacating petitioner's original conviction and sentence, was stayed by the Fifth Circuit pending the State Attorney General's appeal of that order, the State of Florida was under no legal obligation to bargain for petitioner's guilty plea and resentencing, or even to retry him. The legal duty that this Court's March 1971 order would have imposed on the state was suspended by the Fifth Circuit's stay of that order. Because of the stay of its legal effectiveness, that order did not operate to vacate petitioner's original conviction and sentence. Hence, the State of Florida was

under no legal duty to do anything other than honor petitioner's original conviction and sentence.

### C. Collateral Effect of Fifth Circuit's Stay Order as Interpreted by Florida First District Court of Appeal: No Authority to Resentence Petitioner.

After staying the effect of this Court's March 1971 order (in April 1971), the Fifth Circuit reversed that order in November 1971. Meanwhile, in September 1971, petitioner had pled guilty under a plea bargain and been resentenced. In December 1971, petitioner pro se sought a writ of habeas corpus from the First District Court of Appeal of the State of Florida.

After the Fifth Circuit reversed this Court's March 1971 order, petitioner's counsel filed a suggestion of mootness in December 1971, because of the September proceedings in which petitioner was purportedly resentenced. The Fifth Circuit was concerned that its November 1971 reversal of this Court's order might be an advisory opinion only, without the constitutional jurisdiction of a genuine case or controversy, and should be withdrawn for mootness. However, when it learned of petitioner's pro se habeas corpus petition before the Florida First District Court of Appeal, the Fifth Circuit decided to await the interpretative decision of that court before determining whether its own earlier reversal of this Court was moot. Nonetheless, the Fifth Circuit at that time explained what the intended effect of its April 1971 stay of this Court's order had been.

In March 1972, the Florida First District Court of Appeal, denied petitioner's pro se petition. The Court ruled that, because of the Fifth Circuit's timely stay and eventual reversal of this Court's order, the September 1971 proceedings in which a five-year sentence was purportedly imposed on petitioner "were a nullity." Clearly, the Florida First District Court of Appeal interpreted the Fifth Circuit's April 1971 stay order to have an applied, collateral effect upon the State of Florida: there was no legal authority to bargain for petitioner's guilty

plea and to resentence him, since his earlier conviction and sentence remained valid. Once that decision was known, the Fifth Circuit rejected the suggestion that when it reversed this Court's order (which would have vacated petitioner's original conviction and sentence, now declared to be valid) it ruled on a moot issue. The issue on appeal from this Court's order was the validity of petitioner's original conviction and sentence. That issue was not moot if, and only if, petitioner's original conviction and sentence (which this Court would have vacated, but was stayed and then reversed from so doing by the Fifth Circuit) remained valid. Hence, when it overruled the suggestion of mootness, the Fifth Circuit accepted the validity of petitioner's original conviction and sentence; and it accepted as well the decision of the Florida First District Court of Appeal that upheld the validity of the original conviction and sentence as an applied, collateral consequence of the Fifth Circuit's stay of this Court's order.

When the First District Court of Appeal interpreted the Fifth Circuit's stay to apply to the State of Florida, that interpretation bound the Florida courts. When the Fifth Circuit accepted the First District Court of Appeal's interpretation, that acceptance bound this Court. In other words, the decision of the First District Court of. Appeal, when ratified by the Fifth Circuit, became the law of this case, and this Court is governed by it.

At the time· of petitioner's rearraignment and resentencing, a valid conviction and sentence were in effect. There were no charges pending against petitioner—the original robbery and assault charges had already been lawfully disposed of. Unless petitioner's conviction was vacated or set aside or new charges were preferred against petitioner, the assistant state attorney had no authority to rearraign petitioner. The res judicata effect of the original conviction barred the purported rearraignment and resentencing, rendering them nugatory. Although petitioner's rearraignment and resentencing were not ultra vires as a direct, intended consequence

of the Fifth Circuit's stay order, they were without authority as a collateral consequence of that stay order, applied by the Florida First District Court of Appeal to the state, and assented to. by the Fifth Circuit.

## II

By his second contention, petitioner challenges the state's fidelity to the plea bargain entered into by him on September 7, 1971. The rearraignment and resentencing of petitioner, and the underlying plea agreement, were invalid; consequently, petitioner's contention does not present a genuine issue of controversy, and the Court need not reach it. Where plea proceedings are shown to be invalid, a purported issue regarding adherence to or breach of the underlying plea agreement is illusory.

Petitioner's reliance upon *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), is misplaced. In *Santobello,* the Supreme Court ruled that the State's failure to carry out a term of a plea bargain required a new trial. But in that case, there was no question that the plea bargain was valid. In the present case, petitioner's plea agreement and resentencing were invalid and legally ineffective. The plea bargain in *Santobello* was the product of pending criminal charges—unlike petitioner Anderson, petitioner Santobello was not already serving a sentence for the very charges on which the plea agreement was based.

Indisputably, the assistant state attorney who rearraigned petitioner and entered into a plea agreement with him made a serious mistake: he rearraigned petitioner without any authority to do so. The assistant state attorney's error was very unfortunate, both for the State of Florida and for petitioner, and it is regrettable. However, while petitioner was misinformed, he has suffered no real injustice. Petitioner's 1967 conviction and sentence were never vacated, for this Court's order granting the writ of habeas corpus never became effective. Petitioner's original conviction has remained valid con-

tinuously, and petitioner has continuously been serving his original twelve-year sentence. Petitioner's legal status has not changed since 1967, and any proceedings or agreements purporting to alter that status were unauthorized and therefore invalid. Petitioner has been promised nothing that he could lawfully receive, and he has received no punishment greater than that originally assigned him. Indeed, though the point does not excuse the prosecutor's error, petitioner's own actions suggest that he knew the plea agreement with the assistant state attorney was invalid: following the First District Court of Appeal's denial of his state habeas corpus petition on March 7, 1972, he failed to challenge his commitment for a period of almost four years.

## RECOMMENDATION

For the reasons stated, it is recommended that petitioner's petition for a writ of habeas corpus be DENIED. This recommendation may be reviewed pursuant to Local Rule 6.02, Middle District of Florida.